**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID J. BAKER,** | ) | |
| | ) | **Case No. 14-1027** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **PLAINTIFF'S APPENDIX IN** |
| | ) | **SUPPORT OF MOTION FOR** |
| **TEAMSTERS LOCAL UNION NO. 120,** | ) | **SUMMARY JUDGMENT** |
| | ) | |
| **Defendant.** | ) | |

Plaintiff David J. Baker submits the following Appendix in Support of Motion for

Summary Judgment pursuant to Local Rule 56(a)(4):

## TABLE OF CONTENTS

Excerpts of Deposition of David Baker ................................................................................. 1

Excerpts of Deposition of William Moore ........................................................................ 9

      Deposition Exhibit No. 18 ..................................................................................18

      Deposition Exhibit No. 20 ..................................................................................32

Excerpts of Deposition of Kris Rademacher ....................................................................36

Excepts of Deposition of Joseph Dwyer ..........................................................................40

Excerpts of Deposition of John Rosenthal .......................................................................44

Excerpts of Teamsters Local Union No. 120's Answers to Interrogatories ........................48

Excerpts of Unemployment Appeal Hearing ...................................................................52

Executed Release and Assignment and Transmittal Letter ...............................................59

Declaration of Kevin J. Visser ........................................................................................62

SIMMONS PERRINE MOYER BERGMAN PLC

By: /s/ Kevin J. Visser
Kevin J. Visser AT0008101
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
Telephone: (319) 366-7641
Facsimile: (319) 366-1917
E-mail: kvisser@simmonsperrine.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2016, I filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following:

Mark T. Hedberg
Hedberg & Boulton, PC
100 Court Avenue, Suite 425
Des Moines, IA 50309
mark@hedberglaw.com

Katrina E. Joseph
Teamsters Local Union No. 120
9422 Ulysses Street NE
Blaine, MN 55434
kjoseph@teamsterslocal120.org

/s/ Kevin J. Visser

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF IOWA
 2                     EASTERN DIVISION

 3   DAVID J. BAKER,              )
                                  )
 4              Plaintiff,        )   CASE NO. 14-1027
                                  )
 5        vs.                     )   DEPOSITION OF
                                  )   DAVID J. BAKER
 6   TEAMSTERS LOCAL UNION NO. 120, )
                                  )
 7              Defendant.        )

 8

 9

10   APPEARANCES: ATTORNEYS KEVIN J. VISSER AND GRAHAM R. CARL,
                  of the firm of Simmons Perrine Moyer Bergman, PLC
11                115 Third Street SE, Suite 1200, Cedar Rapids,
                  Iowa 52401-1266, appeared on behalf of
12                David J. Baker.

13                ATTORNEY KATRINA JOSEPH, Teamsters Local 120,
                  9422 Ulysses Street NE, Blaine, Minnesota 55434,
14                appeared on behalf of Teamsters Local Union
                  No. 120.
15
                  Also Present: Tom Erickson
16

17

18

19            Deposition of David J. Baker, taken at the

20   offices of Simmons Perrine Moyer Bergman, PLC, Suite 1200,

21   115 Third Street SE, Cedar Rapids, Iowa, on the 14th day of

22   April 2015, commencing at 9:00 a.m., and reported by

23   Nancy Pearson, a Certified Shorthand Reporter in and for

24   the State of Iowa.

25
```

1                    DAVID J. BAKER,

2    being first duly sworn, was examined and testified as follows:

3    EXAMINATION BY MS. JOSEPH:

4    Q.  Would you state and spell your full name?

5    A.  David J. Baker, B-a-k-e-r.

6    Q.  Mr. Baker, I know you, and we know each other.  We have

7         dealt with each other in the past and but I want to go

8         through a couple of ground rules about today's

9         deposition.

10                        This is intended to get the facts from you

11        about the lawsuit that you filed against Local 120,

12        so I'm going to be asking a series of questions.  If you

13        don't understand a question or it's confusing to you,

14        all you need to do is tell me and I'll try to rephrase it

15        so you understand what I'm asking you.  I don't want you

16        to answer a question that you don't understand.  Okay?

17                        You need to answer in words so that the

18        court reporter can take them down.  So no nodding your

19        head, shaking your head or uh-huh or uh-uh, we need to

20        make sure the record is clear going forward, because this

21        testimony could be used later in the case, you understand.

22    A.  I do.

23    Q.  If you need any breaks as we go along all you need to do

24         is let me know and we'll take a break so you can use the

25         restroom or get some fresh air, whatever you need.  Okay?

1    A.  No.

2    Q.  Is it affecting your ability to recall facts or things

3        that occurred in the past?

4    A.  No.

5    Q.  Okay.  Now, aside from this particular case have you ever

6        been involved in a lawsuit before?

7    A.  Yes.

8    Q.  And can you describe who were the parties to that

9        lawsuit?

10   A.  I wouldn't -- I don't remember the name, but it was

11       handled through my insurance.  It was an auto accident.

12   Q.  Any other lawsuits aside from that?

13   A.  No.

14   Q.  Have you ever testified in a deposition before?

15   A.  No.  Let me think about that.  No.

16   Q.  Now, you testified that you worked for Teamsters

17       Local 421.  What did you do for Local 421?

18   A.  I was elected business agent and president.

19   Q.  And when were you elected business agent?

20   A.  I was elected in 1991 to be effective January 1 of 1992.

21   Q.  And were you elected solely as a business agent or

22       a combination agent and president?

23   A.  Combination agent -- I believe the title at the time was

24       president/elected business agent.

25   Q.  And prior to your election had you ever held any position

1    Q.  Anyone else?

2    A.  Not at that time.

3    Q.  You testified that you and Mr. Rosenthal in addition to

4        your positions on the executive board were business

5        agents.  Was there anyone other than the two of you who

6        were business agents at Local 421 in July of 2008?

7    A.  No.

8    Q.  Now, effective August 1st of 2008 Local 421 merged with

9        Teamsters Local 120, is that right?

10   A.  That's when it was official, yes.

11   Q.  Can you describe for me what a merger is and what

12       occurred specifically between Local 421 and Local 120?

13   A.  Well, there was discussion on a merger, and that had

14       gone on for some time.  And we were -- John Rosenthal

15       and I and our executive board had had discussions on

16       what -- our Local was in fairly good shape, as we always

17       felt we were one big group away from -- you know,

18       if we were to lose a group that it would have been tough

19       financially.  It would have probably involved either

20       doing away with a position, either a business agent or

21       clerical position, and Dubuque would be a real tough area

22       to service with one business agent.  It would be almost

23       impossible.  So you know, we were interested in

24       discussing the possibility of a merger with another

25       Local Union.

```
 1    Q.   Now, I've handed you a document that's been marked as

 2         Deposition Exhibit 4, if you would take a look at that.

 3    A.   Okay.

 4    Q.   And do you recognize that document?

 5    A.   No.

 6    Q.   After the merger of Local 421 and Local 120 did you

 7         become employed by Local 120?

 8    A.   I did.

 9    Q.   And in what capacity?

10    A.   Elected business agent.

11    Q.   Did you ever request to look at a copy of Local 120's

12         bylaws?

13    A.   Yes.

14    Q.   Did you ever receive them?

15    A.   I did.

16    Q.   And this copy, Deposition Exhibit 4 in front of you is

17         dated 2010.  What version of the bylaws did you receive?

18    A.   2007.

19    Q.   If you want to take a look through Deposition Exhibit 4,

20         please.

21    A.   Sure.

22    Q.   And I'm specifically going to ask you to look for

23         differences between the 2007 version and this 2010

24         version of the bylaws.

25    A.   I don't know how I would do that.
```

1      provision?

2   A.  Yes, I believe so.

3   Q.  And is it your understanding that Mr. Moore operated the

4       Local Union pursuant to the authority of the trustees

5       under this provision of the IBT constitution?

6   A.  I didn't -- again I viewed him as the principal officer

7       of the Local, albeit temporary.

8   Q.  Did you ever undertake any research to determine what

9       Mr. Moore could and couldn't do as the trustee of the

10      Local?

11  A.  No.

12  Q.  Did you ever ask anybody what his authorities were as the

13      trustee of Local 120?

14  A.  I don't recall.

15  Q.  Did you have any conversations with Mr. Moore in December

16      of 2012 about your job performance?

17  A.  I don't recall any.

18  Q.  You were terminated in December of 2012, correct?

19  A.  Oh, yes.

20  Q.  What date?

21  A.  December 17th.

22  Q.  Why had you gone up to the Blaine union hall on

23      December 17th?

24  A.  There was a hearing that day.

25  Q.  And that was the hearing for the trusteeship?

1    A.  I believe so, yes.

2    Q.  Did you attend that hearing?

3    A.  I did.

4    Q.  And what occurred after the hearing was concluded?

5    A.  Mr. Moore asked to meet with me and he terminated my

6        employment.

7    Q.  And I want you to describe, to the best of your

8        recollection, exactly what was said during that meeting

9        with Mr. Moore.

10   A.  We walked in.  This is the best of my recollection.

11       We walked in the door, and I don't even think I had

12       gotten seated and he said, "I'm letting you go," and

13       of course I questioned him on that.

14   Q.  What did you say?

15   A.  I said, "For what?  Why?"  And then I asked him to

16       reconsider.

17   Q.  What was his response?

18   A.  He said something to the effect of "I sent my man down to

19       your Union meeting," which would have been the general

20       meeting in Dubuque the previous week.  And then he had

21       my name tag from the podium and he kind of flipped it

22       over to me and he said, "You can have this for your

23       22 years of service."  And then he had a motel bar of

24       soap and he flipped that at me on the desk in front of me

25       and said, "Here's some soap for you."

1 Q. Was anything else said?

2 A. Other than he was letting me go.

3 Q. How did the meeting conclude?

4 A. He asked me for my credit card, keys, key to the office

5   in Dubuque, phone, which he subsequently agreed to let me

6   keep it because I was transporting a couple of Union

7   stewards, and then I turned that in the next day in

8   Dubuque.

9 Q. Did you leave then?

10 A. Yes.

11 Q. Who was present, if anyone, besides you and Mr. Moore?

12 A. Joe Dwyer.  I believe his name is Joe.

13 Q. And what was Mr. Dwyer's position?

14 A. I believe he was the assistant trustee.

15 Q. And what is your understanding of Mr. Dwyer's position

16   and authority as the assistant trustee?

17 A. I'm not sure.

18 Q. Did Mr. Dwyer say anything during the meeting?

19 A. No.

20 Q. So just to be clear, it was solely you and Mr. Moore

21   speaking?

22 A. Yes.

23 Q. When Mr. Moore made the comment about soap, what was

24   he referring to?

25 A. I assumed he was referring to a comment that I made

**Page 1**

1        IN THE UNITED STATES DISTRICT COURT

        FOR THE NORTHERN DISTRICT OF IOWA

2                EASTERN DIVISION

-----------------------------X

3 DAVID J. BAKER,                    :

4              Plaintiff,            :

5 vs.                               :      Case No. 14-1027

6                                   :

7 TEAMSTERS Local UNION NO. 120 :

8              Defendant.            :

9 -----------------------------X

10

11        Video Deposition of WILLIAM MOORE

12            Washington, D.C. 20001

13          Monday, December 14, 2015

14              11:00 a.m.

15 Job No.    J0256347

16 Pages      1 - 137

17 Reporter:  Tara F. Smith

18

19

20

21

22

23

24

25

**Page 2**

1 Deposition of WILLIAM MOORE, held at the offices of:

2

3        International Brotherhood of Teamsters

4        25 Louisiana Avenue, Northwest

5        Washington, D.C.  20001

6

7

8

9 Pursuant to agreement, before Tara F. Smith, a Notary Public

10 in and of the District of Columbia.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Page 3**

1            A P P E A R A N C E S

2 ON BEHALF OF THE PLAINTIFF:

3      KEVIN J. VISSER, ESQUIRE

4      SIMMONS PERRINE MOYER BERGMAN - CEDAR RAPIDS

5      115 Third Street, Southeast, Suite 1200

6      Cedar Rapids, Iowa 52401

7      (319) 896-4059

8

9 ON BEHALF OF THE DEFENDANT:

10      KATRINA E. JOSEPH, ESQUIRE (via telephone)

11      INTERNATIONAL BROTHERHOOD OF TEAMSTERS

12      9422 Ulysses Street, Northeast

13      Blaine, Minnesota 55434

14      (763) 267-6146

15

16 ON BEHALF OF THE DEPONENT:

17      BRADLEY T. RAYMOND, ESQUIRE

18      INTERNATIONAL BROTHERHOOD OF TEAMSTERS

19      25 Louisiana Avenue, Northwest

20      Washington, D.C.  20001

21      (202) 624-6847

22

23 ALSO PRESENT:

24      ALEX POOLE - Videographer

25

**Page 4**

1            C O N T E N T S

2 EXAMINATION OF WILLIAM MOORE:              PAGE

3      By Mr. Visser                          6

4

5            E X H I B I T S

6            (Attached to transcript)

7 MOORE DEPOSITION EXHIBITS                   PAGE

8 Ex. 1    Hughes & Costello Memo             56

9 Ex. 2    Email dated 20 Nov 12             57

10 Ex. 3    Email dated 27 Nov 12            62

11 Ex. 4    Pizza Email dated 8 Dec 12       65

12 Ex. 5    Eastern Iowa Meeting Notes       67

13 Ex. 6    David Baker letter, 16 Dec 12    83

14 Ex. 7    Schauer email dated 11 Jan 13    93

15 Ex. 8    Email dated 25 Jun 13            97

16 Ex. 9    Withdrawal Card email, 1 Jul 13  99

17 Ex. 10   Refusal of check email, 1 Jul 13 99

18 Ex. 11   Health & Welfare Benefits Letter 108

19 Ex. 12   Misuse of funds letter, 7 Oct 14 111

20 Ex. 13   Improper dues calculation letter

21         Dated 16 Oct 14                   111

22 Ex. 14   Weekly Report email, 15 Jan 15   115

23 Ex. 15   Email correspondence from

24         K. Saylor, dated 20 Jan 15        116

25 Ex. 16   Update of charges email, 3 Feb 15 117

Page 21

1 about -- is there such a thing as a personal representative
2 from your Local to the International?  It's not --
3    A.  Yeah, I don't know how that would fit.
4    Q.  I heard it said, I think, that way around but I
5 wanted to make sure that there was no such thing.
6    A.  I can't picture it.
7    Q.  Okay.  So when you were brought in to serve as the
8 Trustee for Local 120, you were serving as its principal
9 officer to carry out its duties?
10   A.  Yes, sir.
11   Q.  So any actions that -- what's the source of your
12 power as a Trustee particularly in the case of 120?
13   A.  The International Constitution.
14   Q.  And is the part of the International Constitution
15 that provides for the Trustee to be empowered was that
16 something that was created as a result of this consent decree
17 coming out of the Southern District of New York?
18   A.  No.  There were trusteeships way before the IRB.
19   Q.  Okay.  Do you know what it is -- who decides that a
20 trusteeship should be put in place?
21   A.  I would assume it's done -- I'm not involved in
22 that, so I don't know.  Maybe I shouldn't even answer.  I
23 generally hear from legal, and they say, "You're going to X,
24 Y, Z."
25   Q.  Is that what happened here with Local 120?

Page 22

1    A.  Yes.  And then I get a letter soon after that.
2    Q.  In terms of your personal payroll, you continue to
3 be an employee of IBT while you're serving as a Trustee?
4    A.  Yes, sir.
5    Q.  So if we looked on the LM1 or LM2 for various year,
6 you might be listed as an officer but it wouldn't show that
7 you had been paid from the local's funds?
8    A.  To be clear, I do pick get -- I do pick up a credit
9 card when I go in.  So if I have to go get a computer or I
10 have to go get something like that -- nothing that benefits
11 me.  No benefits, no money, nothing.
12   Q.  And you don't -- you wouldn't vest in the Local 120
13 officer's pension plans or any other benefit plans that a
14 Local officer would be eligible for?
15   A.  No, sir.
16   Q.  Those benefits, if any, would come from your regular
17 employment with IBT?
18   A.  Yes, sir.
19   Q.  And to your point, if I understand that clearly, but
20 if you had to charge expenses for the benefit of the
21 membership in the ways that you've described: Computers,
22 office supplies, purchasing things, you have the authority to
23 incur those expenses?
24   A.  Yes, sir.
25   Q.  When the 120 trusteeship came into place, which

Page 23

1 officers or other authorized representatives were displaced
2 as a result of your trusteeship?
3    A.  Brad Slawson, Senior; Brad Slawson, Junior;
4 Mr. Walls; Mr. Baker, and two more.
5    Q.  You can think about that.  My question was more
6 general than that.  I'm sorry, Mr. Moore if it was unclear
7 which it probably was.
8    A.  Okay.
9    Q.  Local 120 had offices and it had trustees as well?
10   A.  Trustees are officers.
11   Q.  Okay.  And the trustees --
12   A.  Well, wait a minute.  Let's don't -- let's make sure
13 I'm answering you so you can understand what I'm thinking.
14 There are no officers in as trusteeship.  They're gone.
15 While the Local is running, there are seven officers and
16 there's two -- three trustees among those seven.
17   Q.  So when we use the term "trustees" in the context of
18 a Local that isn't under the International Trusteeship;
19 that's a --
20   A.  They are the financial trustees that review the
21 books.
22   Q.  And the original question that I thing got us off on
23 this tangent on was -- I want to understand correctly -- when
24 the trusteeship was imposed in November of 2012, whoever the
25 officers and the trustees were, were immediately displaced by

Page 24

1 your trusteeship; is that right?
2    A.  That's correct, sir.
3    Q.  Okay.  And the individuals were some of the ones
4 that you mentioned:  Mr. Slawson, Senior and Junior, and
5 three financial trustees and --
6    A.  A board secretary and vice president.
7    Q.  Okay.  And among those individuals neither Mr. Walls
8 nor Mr. Baker was included; right?
9    A.  They were not on the board at that time.  That's
10 correct.
11   Q.  Okay.  They later left employment?
12   A.  From?
13   Q.  From Local 120?
14   A.  That's correct.
15   Q.  Okay.  So when I said displaced, you were using the
16 broader context rather than an immediate displacement.
17      They weren't fired in November of 2012, Walls and
18 Baker weren't?
19   A.  That's correct.
20   Q.  Okay.  When -- but Walls was fired?
21   A.  Yes.
22   Q.  When so?
23   A.  I don't know.  I can't remember.
24   Q.  Why so?
25   A.  Misuse of his credit card and some -- not taking



setup

Page 29

1 things that they used to have because they aren't given the

2 rights to go do that with.

3    Q.   What specifically does the IBT do or advocate for in

4 order to help, maintain or increase its private sector union

5 participation?

6    A.   We have our own division for public employees set up

7 by an employee director. Who -- I'm not -- maybe I shouldn't

8 guess or assume. He would be the one that would best answer

9 your question about what we're doing to help --

10    MR. RAYMOND: Bill, I'm going to suggest that you

11 listen to the question. He asked you about the private

12 sector not the public sector.

13    THE WITNESS: Oh, I'm sorry.

14    MR. VISSER: Thanks. I didn't want to interrupt, Mr.

15 Moore.

16    THE WITNESS: Say it again.

17    Q.   Yes. In the private sector --

18    A.   Mm-hm?

19    Q.   -- what's the union doing to combat the attrition of

20 the membership?

21    A.   We've got a very large organizing staff. We do a

22 lot to train and organize new people. Again, you're looking

23 at law changes. You're looking at diminishing jobs in our

24 sectors, so it's a day-to-day scrap.

25    Q.   If we take it down to a Local business-agent level,

Page 30

1 people like Mr. Baker, what do you expect them to do to help

2 combat attrition of -- from teamster jobs in the private

3 sector?

4    A.   Build those one-on-one relationships, talk to people

5 one-on-one that have an active sign-up.

6    Q.   Is there any one magic bullet, if you will for

7 maintaining those one-to-one relationships to keep

8 memberships strong?

9    A.   No. No. That depends on what area you're in.

10    Q.   What are some of the successful strategies that

11 you've seen employed during your career?

12    A.   Some of them use some kind of material offer. A

13 bounty, if you will, where if you sign up a new person, you

14 get first month's dues. Some of them have a membership

15 chairman who's like a steward but all that person does is

16 handle memberships, so if the stewards -- they have their own

17 duties to do. There's some locals that will buy "X" amount

18 of t-shirts, set up a booth outside of the workplace and get

19 people to sign up and they'll give them a t-shirt. And then

20 some of them probably, I think are more successful going

21 door-to-door.

22    Q.   What about -- those would be recruiting strategies;

23 right?

24    A.   Mm-hm.

25    Q.   That's a "yes" for Tara?

Page 31

1    A.   Yes, sir.

2    Q.   Thank you.

3    What about strategies to maintain the relationships

4 with existing members? What are some successful strategies

5 been that you have seen?

6    A.   Being out in the workplace being seen and

7 representing their issues; letting them know you are

8 representing their issues.

9    Q.   When you say representing their issues, tell a

10 broader kind of audience what kinds of things that would

11 mean.

12    A.   If, in fact, a law came before Congress or something

13 or your state representative and you lobbied it; letting

14 people know that you lobbied for that particular industry and

15 how they were affected by it. We also at the same time

16 encourage them to get involved (inaudible) and participate in

17 politics. They see you active not just in politics but

18 grievances and stuff like that.

19    Q.   I want to go now to the time of your appointment as

20 Trustee for Local 120.

21    How is it that you think you learned that you were

22 going to receive this particular assignment?

23    A.   I think I heard it from counsel.

24    Q.   Okay. And when you say counsel, you're referring to

25 someone within the legal staff of the International

Page 32

1 Brotherhood of Teamsters here?

2    A.   Yes.

3    Q.   Is that the normal way that you would become aware

4 of a trusteeship assignment?

5    A.   I'd say most of the time.

6    Q.   Okay. And what steps did you take to implement your

7 trusteeship there in Minnesota?

8    A.   Well, first of all, I waited until I was sent the

9 IRB Report, then I looked at the size of the Local. I looked

10 at the locations that they did business. I looked at what my

11 needs were to take over a Local that size, and I asked for

12 help from various people who had the ability to fill those

13 needs.

14    Q.   What kind of help did you obtain?

15    A.   Other IBT reps came in to help. For example, the --

16 to take over the outlining areas. I also got some people

17 from the Joint Council in the -- Iowa's part of to help to

18 take over the Local in the rural areas or the out states.

19 Not rural but out state, and brought communications in

20 because there's always a possibility that we'll be dealing

21 with the press and we try not to do that.

22    Q.   So what did you do initially with the help of the

23 IBT and the Joint Council and the communications folks?

24    A.   Say that again.

25    Q.   How did you let those -- Local 120 know that you



Page 33

1 were assuming control of the Local?

2    A.  Oh, okay.  Just met for breakfast and went to the
3 Local and asked them to call the Slawson's in, and I had the
4 whole staff that was there present in the conference room and
5 we relieved the Slawson's.  And I told the rest of them that
6 we're now working for the Trustee.  I told them that the
7 Local was a trusteeship and all decisions and expenditures
8 will come across my desk.

9    Q.  What was the -- how would you characterize the
10 problem that you were sent there to remedy?

11   A.  To who?  I -- what do you mean?

12   Q.  Why was the trusteeship put in place?

13   A.  Oh, because of the IRB Report.

14   Q.  The IRP Report -- is it fair to say that its primary
15 focus was on the mishandling of the building of the facility
16 in Blaine, Minnesota with other issues identified?

17   A.  Yeah, I don't know which one would be primary.

18   Q.  Okay?

19   A.  There were numerous issues.

20   Q.  Name ones that you would say were the most important
21 ones that you had to deal with when you arrived.

22   A.  The bar in Fargo and allegations that there was
23 possibly money missing there.  The use of credit cards for
24 lots of alcohol and other questionable expenditures.  I've
25 got two more since then, so I'm trying to remember back.

Page 34

1 Follow up on the construction issue.

2         And I suppose that the biggest thing was that there
3 was no mortgage for the 3.4 million dollar debt that the
4 Local had.  And there had been no contact with  any banks,
5 and we were 13 days past any kind of contact for the
6 mortgage.

7    Q.  Do you feel like by the time the trusteeship ended,
8 the problems you've just identified were solved?

9    A.  Yes.

10   Q.  Okay.  And the trusteeship lasted a little more than
11 two years?

12   A.  Let me see.  So I went on November 12th and then
13 left the 1st of January of '15.

14   Q.  So a set period of time in your experience with the
15 eight or nine or more trusteeships of which you have been
16 involved, that a trusteeship lasts?

17   A.  From my own experience, I have been anywhere from
18 five or six months to 22 months.  It kind of depends on what
19 the demands were and if we could fix them and go.

20   Q.  Okay.  What's the -- how you know when your work is
21 done as a Trustee?

22   A.  When you've left the Local better than it was when
23 you got there.

24   Q.  And within whose power does it lie to terminate a
25 trusteeship?

Page 35

1    A.  I have to make periodic reports in no less than
2 every 6 months, and those I make directly to the legal
3 department.

4    Q.  Are those reports that you make available to the
5 general membership of the Local until the trusteeship?

6    A.  No.

7    Q.  At the time, you were you involved in the -- as I
8 understand it, the national elections that are held here
9 every five years?

10   A.  I guess I would want to know what you meant by
11 involved.  I'm affected by them.

12   Q.  Okay.  The IBT hold its elections every five years;
13 right, for the nationwide offices?

14   A.  Yes.

15   Q.  And you have been going to the National Convention
16 since '86?

17   A.  '81.

18   Q.  Have you held a voting position in each of those
19 national conventions?

20   A.  No.

21   Q.  For which years have you not held a voting
22 position?

23   A.  Let's see.  No, I guess I have.  This will be the
24 first one that I wasn't.

25   Q.  2016?

Page 36

1    A.  Mm-hm.

2    Q.  What role did you have at the 2011 convention?

3    A.  Just assisting backstage and assisting set-up, and
4 assisting the different districts with the things that they
5 needed help with in terms of additional staff and that sort
6 of thing.  A staffer.

7    Q.  What's the primary business that gets conducted at
8 this -- every five-year convention?

9    A.  Oh, wow.  There's resolutions.  There's constitution
10 issues.  There's nominations for elections.  There's
11 financial reports.  Basically a lot of the same things that
12 happen at the local union only on a grand scale.  There's
13 organizing reports.  There's -- I could go on and on.

14   Q.  How long does this convention last?

15   A.  I'm thinking four or five days.

16   Q.  And what month of the year is it usually held?

17   A.  June, at least some of the time.

18   Q.  In 2011, was there -- were there contested elections
19 -- were the elections contested for most of the national
20 positions?

21   A.  There were nominations, yes.

22   Q.  Okay.  And when you say there are nominations, does
23 that mean the delegates who are in power to vote and chose
24 between those nominated?

25   A.  Yes.



Page 101

1   A.   No, I think there were less.

2   Q.   Were you asked at the second meeting why Mr. Baker

3 was terminated?

4   A.   Yes.

5   Q.   Was Mr. Baker present?

6   A.   I don't remember.

7   Q.   Did you tell the ranking -- was it a ranking file

8 member that asked you the question?

9   A.   I assume, yes.

10   Q.   Did you tell the ranking file member why Mr. Baker's

11 employment had been terminated?

12   A.   I don't think so.

13   Q.   In May of 2013, did you provide a status report to

14 the Dubuque membership as to what had gone on with the

15 trusteeship?

16   A.   I would assume that I did, yes.

17   Q.   And as of May 2013, what had happened with the

18 trusteeship in terms of any findings that had been made or

19 any actions taken?

20   A.   The trusteeship had been upheld, which means the

21 trusteeship would continue.  And I'm not sure -- I think we

22 had the results by then of the charge hearing.

23   Q.   What's a charge hearing?

24   A.   That's where the IRB's charges are taken up in

25 Article 19 of our constitution.  I don't prepare that one.

Page 102

1 We use other counsel to prepare that presentation, and then

2 they present it to -- again, another panel.

3   [A telephone interruption occured.]

4   MR. VISSER:  I don't -- maybe Katrina got

5 disconnected.

6   MR. RAYMOND:  Hello?  Oh, okay.  Hold on.

7   MR. VISSER:  Maybe if you press it, it will go to

8 the speakerphone.

9   MR. RAYMOND:  Yeah.  How do I --

10   MR. VISSER:  You'd bet -- ask Tara she knows how to

11 do everything.

12   THE WITNESS:  She can do it.

13   THE VIDEOGRAPHER:  We're going off the record.  The

14 time is 2:02, we're going off the record.

15   [The conference call was restored.]

16   THE VIDEOGRAPHER:  The time is 2:02.  We're back on

17 the record.

18 BY MR. VISSER:

19   Q.   Mr. Moore, I think you were describing for us what

20 the charge hearing was, and the IR -- the Constitution

21 Article 19 and there's an IRB hearing.

22   I think you were about to tell us who the deciders,

23 if you will, at the IRB hearing, who makes the decision

24 there?

25   A.   There's a separate panel of three union officers

Page 103

1 from -- throughout the nation not the ones that sat on the

2 trusteeship hearing.  And then this -- they have -- charged

3 parties can speak, and the charging party can speak.  And

4 then they take that record and bring it back to legal and

5 they make a recommendation, I believe, to the General

6 President on what they found.

7   Q.   Oh, what was the -- a charge hearing was held

8 here?

9   A.   Not here.  Out there.

10   Q.   Here in the Local 120 matter?

11   A.   Yes.

12   Q.   Was it resisted by anyone?

13   A.   Yes.

14   Q.   Who resisted it?

15   A.   The Slawsons, Junior and Senior, and then they had

16 some witnesses that spoke.

17   Q.   What was the outcome of the charge hearing?

18   A.   They were found to be -- the word isn't guilty.

19 They were found -- the charges were to be upheld and

20 discipline assessments were made.

21   Q.   Do you know about when that was in the timeline

22 here, first half of 2013?

23   A.   Yeah, I would -- I was thinking the meeting was --

24 the hearing was in like February, so I would have known by

25 May what the response was.

Page 104

1   Q.   And no charges were brought against Mr. Baker were

2 they?

3   A.   No.  We never forwarded any of that stuff.  We kept

4 it in-house.  We kept it as low-key as possible.

5   Q.   As I understand it, some IBT auditors did come at

6 some point and take a look at credit card usage?

7   A.   Yes.

8   Q.   Do you remember when that was?

9   A.   They made it in two trips, but as far as the exact

10 time, I don't remember.  It would have been in '13.

11   Q.   And I think that Mr. Dwyer told us this past

12 Thursday when he testified, that the audit took place in May

13 and June or maybe June and July, but somewhere in that late

14 spring time frame of 2013; does that sound about right?

15   A.   Probably.

16   Q.   What findings, if any, were made by the IBT

17 auditors?

18   A.   It was found that Brad Senior and Brad Junior both

19 had used their credit cards improperly and spent it on things

20 that were not for the benefit of the members, which is

21 required under DOT -- DOL.  They found that there were two or

22 three other people who had done the same thing, but were

23 still on the staff but not to any great degree.  And they

24 found delinquencies with Baker and Walls and did a

25 spreadsheet on that.



Page 105

1   Q.  Did Baker and Walls do effectively the same thing as
2 the two or three other people that you referred to did?
3   A.  No.
4   Q.  Okay.  What did they do that was different?
5   A.  Well, the difference between the Slawsons and Baker,
6 specifically, was that the Slawsons did provide the itemized
7 receipts as requested and required by the Department of
8 Labor.  Theirs was more of misuse of eating in town, drinking
9 in town.  Our rules are you don't buy personal meals in town,
10 you go home and eat, or you -- and in Dave's case, there were
11 some in town but probably 90 percent of his were not
12 receipted and if you don't have the itemized receipt, you
13 can't -- you can't prove one way or the other who was there
14 and what was eaten; whether it was one guy drinking at all or
15 what the case was.  And that's the purpose of the itemized
16 receipts at least from the Department of Labor's standpoint,
17 I think.
18   Q.  When is this that you became aware of the results of
19 this audit by the IBT auditors?
20   A.  Soon as -- while they were they, they gave me those
21 documents.  I was aware of those issues when I made the call
22 for them to come in but...
23   Q.  How did you deal with some of these other
24 individuals: Mr. Erickson, Mr. Radermacher, for example, who
25 had made either unauthorized or unreceipted expenditures?

Page 106

1   A.  Those were people who were still on staff except
2 Mr. Walls --
3      MS. JOSEPH:  I object to the extent that you -- that
4 specifics are asked for each of them as I've previously
5 stated in other depositions.  There are confidentiality
6 clauses in each of their agreements and we can't talk about
7 the specifics.  That includes Mr. Moore.
8      MR. VISSER:  Thank you.  And I note that the
9 question went to how they were dealt with not the specifics
10 of the inquires, which I think is kind of in the same bounds
11 as the deposition that we had last week.
12 BY MR. VISSER:
13   Q.  Can you answer how they were dealt with in a general
14 way, Mr. Moore?
15   A.  Now, this is a heck of a place to be between two
16 attorneys here.
17   Q.  Three.  We can bring in more if you want.  I think
18 Ms. Joseph --
19   A.  I don't know what I can say and what I can't say.  I
20 don't want to be on record doing something I'm not supposed
21 to do.
22   Q.  I think Ms. Joseph has made an objection to -- and
23 I'll let her speak to it herself -- but to preserve the
24 record and preserve the confidentiality agreement, which
25 apparently is this.  And I think the question that I've asked

Page 107

1 respects that agreement and that objection.
2      And I think if she has a -- if a question is pending
3 that she's going to direct you not to answer, I -- she will
4 do so.
5      MR. VISSER:  Is that fair, Ms. Joseph?
6      MS. JOSEPH:  That's fair.
7      THE WITNESS:  Restate your question.
8 BY MR. VISSER:
9   Q.  What action did Local 120 take with respect to those
10 like Mr. Erickson, Mr. Radermacher who had -- who used the
11 credit card improperly?
12      THE WITNESS:  So can I answer that?
13      MS. JOSEPH:  Yes.
14   A.  They made restitution.
15   Q.  Did you ever approach Mr. Baker and ask him to make
16 restitution?
17   A.  No.  He nor Mr. Walls because they were already off
18 of the payroll, and I had no jurisdiction.
19   Q.  So the answer is "no"?
20   A.  No.
21   Q.  You filed a claim with Local 120's bonding company
22 in July of 2014; is that right?
23   A.  I don't know about the date but we filed a claim
24 for -- and I then I think we added to it it if I remember
25 right.

Page 108

1   Q.  The initial bonding claim that you filed on behalf
2 of Local 120 was for the misappropriation by the two
3 Slawson's primarily; is that fair?
4   A.  Probably, yes.
5   Q.  And Mr. Chester as well?
6   A.  Yes.
7   Q.  And Mr. Chester is related to the Slawsons in some
8 fashion?
9   A.  I -- yeah.
10   Q.  Moving to the Summer of 2014.  I'm going to hand you
11 what's been marked as Deposition Exhibit Number 11.
12   [Exhibit 11 was marked for identification.]
13      THE WITNESS:  Thank you.
14      THE COURT REPORTER:  You're welcome.
15   Q.  Is Deposition Exhibit Number 11 a letter you
16 received from Mr. Baker?
17   A.  Yes.
18   Q.  He was asking for the -- to evoke the benefit of the
19 Minnesota Lifetime Health Plan under the Minnesota Health and
20 Welfare Plan?
21   A.  Yes.
22   Q.  Why was he asking you to have this benefit
23 designated?
24   A.  I guess -- I don't know why he asked me.  You'd have
25 to ask him that.



Page 121

1 about $25,000 but I'm not sure.

2    Q.   The bonding company began looking into this after
3 you filed a claim in mid 2014 both against the Slawsons and
4 Chester; right?

5    A.   Yes.

6    Q.   And the --

7    A.   After my call and I looked in the files, and talked
8 to people in the office and figured out that we needed it.

9    Q.   Do you claim that the bonding company made some
10 inquiry on its own as to the charges of -- incurred by
11 Mr. Baker or Mr. Walls?

12    A.   Kind of.

13    Q.   How so?

14    A.   Well, Mister -- and I can't remember his last name,
15 but his name is Brian and he's the guy that came to 120 to
16 look at all of the papers.  And then, so then I had -- I had
17 a whole folder of all the people that we had thought misused
18 their credit cards.

19         And said, what -- "You've got these Slawson that are
20 named in the IRB thing but what about these other guys," and
21 I said, "Well, these two are already gone.  There's nothing I
22 can do about it."  And he said, "You ought to file that.
23 It's covered by the bond," so we filed it.

24    Q.   Okay.  And you don't have anything in writing that
25 shows that, do you?

Page 122

1    A.   From Brian?

2    Q.   Or anybody at your bonding company?

3    A.   That they -- that we had that discussion?

4    Q.   Do you have any correspondence from the bonding
5 company showing Mr. Baker -- showing that they were
6 requesting that you file a claim for charges made on the
7 credit card by Mr. Baker?

8    A.   They didn't absolutely request it.  They said, "You
9 can file a claim that would be applicable to this case," and
10 I did.

11    Q.   And, in fact, there was no -- nothing in writing
12 that confirms what you've just said; right?

13    A.   Just that I had to write up a new report while he
14 was there for the new charge.

15    Q.   A new claim?

16    A.   Yes.

17    Q.   Okay.  And is that claim the next exhibit, Exhibit
18 Number 18?

19         [Exhibit 18 was marked for identification.]

20         MR. VISSER:  It's about a dozen pages.

21         THE COURT REPORTER:  Okay.

22    Q.   And is that what Exhibit 18  is?

23    A.   Let me look.

24    Q.   I'm sorry.  Take your time.

25    A.   Yes.

Page 123

1    Q.   And --

2    A.   At least the top is.  I haven't looked at every page
3 on this but --

4    Q.   Take --

5    A.   -- this is one of those spreadsheets that outlines
6 all of the violations on Mr. Baker's part.

7    Q.   You signed this proof of loss form on
8 February 12, 2015; right?

9    A.   That's what it says, yes.

10    Q.   That's after you were aware that Mr. Baker had
11 brought this suit; right?

12    A.   I don't know.

13    Q.   Well, we know from looking at the previous exhibit
14 that that was dated a week earlier that you included in the
15 flyer.

16    A.   Well, we saw the flyer but we -- I don't even know
17 that we knew at that point that he had, in fact, filed a
18 lawsuit.  I don't know when we were served.

19    Q.   And you had been out of office as the Trustee for
20 three or four weeks by this time; right?  This time being
21 February 12, 2015 when you swore -- swore that -- this proof
22 of loss claim?

23    A.   Yes.

24    Q.   And did you take a look at the second page, the
25 Fraud Warning Notice applicable here in the District of

Page 124

1 Columbia indicating that it's a crime to provide false or
2 misleading information to an insurer for the purpose of
3 defrauding them or any other person?

4    A.   I would assume it is, yes.

5    Q.   Okay.  Now the charges that are indicated here that
6 are ascribed to Mr. Baker when we look at the third page of
7 the exhibit, what you have identified as a spreadsheet?

8 We've got one charge in September, a couple in October, one
9 in December of 2008, the first ones.

10    A.   Okay?

11    Q.   Did you ever do any independent checking of yourself
12 to see whether these were appropriate or inappropriate
13 charges?

14    A.   No, I had our auditors come do it.

15    Q.   And when we see that the -- the part above that page
16 that are the charges that are ascribed to Brian
17 Radermacher?

18    A.   Mm-hm.

19    Q.   That it had 65 percent alcohol, 94 percent alcohol
20 and the like --

21    A.   Mm-hm?

22    Q.   -- that's what Mr. Radermacher paid back?

23    A.   Yes.

24    Q.   And I take it on -- is this just part of a
25 spreadsheet that then shows Mr. Radermacher's,



Page 125

1 Mr. Erickson's, the Slawson's, Mr. Walls's charges?

2 A. Yes.

3 Q. For how long did you have this spreadsheet in this

4 form prior to February 12, 2015?

5 A. I don't know that.

6 Q. Who would?

7 A. I suppose the auditor when they sent it back to

8 us.

9 Q. We've got a one-page exhibit that will be Number 19,

10 Deposition Exhibit Number 19.

11 What's this email string about?

12 [Exhibit 19 was marked for identification.]

13 MR. VISSER: That's March 17th, Katrina.

14 A. I don't know what the TH Magazine was but apparently

15 Baker was on a TH Magazine or a TH Today or whatever that

16 is.

17 Q. It sounds like the Dubuque Telegraph Herald?

18 A. I don't know. But that -- if you say so.

19 Q. Did, in fact, are you aware that the Union filed a

20 counter-claim against Mr. Baker after he filed this

21 lawsuit?

22 A. No.

23 Q. Okay. And now I'd like to have you take a look at

24 Exhibit Number 20, which is a one, two, three, four-page

25 exhibit, dated -- the first page which is dated

Page 126

1 March 20, 2015.

2 Mr. Moore, you've been handed a four-page exhibit

3 marked as Deposition Exhibit Number 20. The first page is an

4 email from you on Friday, March 20th of this year to

5 Tom Erickson.

6 What -- for what purpose are you sending

7 Mr. Erickson this information?

8 [Exhibit 20 was marked for identification.]

9 A. Well, it would have been after I left there. And as

10 Principal Officer at that point, he needed to know what was

11 going on with his Local Union. And I basically said, here's

12 this. The bonding company is going to pay and -- but you

13 don't have to do anything.

14 Q. Did you expect this information to be passed onto

15 the Eastern Iowa membership of Local 120?

16 A. I expected that it would be given to all of the

17 members. I mean, you can't -- you don't put $232,000 in the

18 treasury and not tell the members you're doing it.

19 Q. Okay. Do you know whether there was a special

20 request that the -- this item be read at the Dubuque -- read

21 twice at the Dubuque Locals meetings?

22 A. Ask the question again.

23 Q. Do you know whether this information that you sent

24 on March 20th, which is Exhibit 20 was read publicly on more

25 than one occasion at the meeting of the Dubuque Local

Page 127

1 membership?

2 A. No, I don't know.

3 Q. This Release And Assignment that is the second page

4 of this exhibit --

5 A. Mm-hm?

6 Q. -- this is one of -- this is one of the things that

7 you forwarded to Tom Erickson on March 20th; right?

8 A. I don't know. I don't know if that was part of it

9 or not.

10 Q. Well, if we look at the first page, it says,

11 "Enclosed in duplicate are the "Release And Assignment"

12 forms," and it has the amount of $232,000 and some odd

13 dollars?

14 A. Wait a minute.

15 Q. Okay.

16 A. I don't know if we're looking at the same thing.

17 Q. Look at the "Hi Dick" email at the bottom of the

18 first page and --

19 A. Oh, okay.

20 Q. -- then look at the second, sir.

21 A. Well, this is page 1 of 1.

22 Q. Twenty. Page 1 of Exhibit 20.

23 A. But it's also page 1 of 1 of the email.

24 Q. Okay?

25 A. So the point that I'm making is no, I don't know

Page 128

1 that I forward this to him at that time.

2 Q. You've seen the Release and Assignment, the second

3 page of Exhibit 20 before haven't you?

4 A. Yes. Uh-huh.

5 Q. Yeah. You believe that it's accurate?

6 A. Yes.

7 Q. This bonding company was slow as molasses in paying

8 your Union its claim weren't they?

9 MR. RAYMOND: A little vague.

10 MR. VISSER: Let me be more specific.

11 A. I don't know how fast molasses moves.

12 Q. They -- you're from Kansas, you ought to know that.

13 A. [Witness laughing.]

14 Q. When we looked at the first paragraph of the Release

15 And Assignment, Mr. Moore. It says that the payment was

16 being made for liability set out in proofs of loss dated

17 July 29, 2014, do you see that?

18 A. Yes.

19 Q. And they didn't make a payment to you until at least

20 mid-March of the next year. Did you expect faster service?

21 A. We had some debate over that. Yes, sir, we did.

22 Joe, Clara, my assistant and I talked about it several times.

23 The problem was this was so voluminous. I mean, all of these

24 credit card receipts, the whole IRB thing, and quite a bit of

25 money. And the guy that was handling out account just before



Page 129

1 Brian, he left.

2    In fact, we were waiting there for him on the 20th

3 of one month. I can't remember which month it was. He was

4 supposed to be there. It seemed like it might have been

5 January or the year before, I don't remember. But he didn't

6 show up and we called and they said, "Oh, he's not with us

7 any longer," and then they gave it to somebody else and we

8 had to wait on Brian. So yeah, you're right, it was

9 convoluted.

10    Q.    You don't have any reason, Mr. Moore, to believe

11 that this Zurich Fidelity and Deposit Company ever verified

12 any of the claims that you made about Mr. Baker or Mr. Walls

13 in February of 2015, do you?

14    A.    I have no idea how they make their final decision on

15 what they pay.

16    Q.    You do know though that Local 120, according to

17 these words did sell a Sign Transfer or sell over to this

18 insurance company any claims that there might be against

19 others including Mr. Baker; right? They gave you money, you

20 gave them your claims?

21    A.    Right.

22    Q.    Okay.

23    MR. VISSER: I would like to take another real short

24 recess and try to reset and see what else we have to take

25 care of here, and hopefully get things wrapped up pretty

Page 130

1 quickly if we can.

2    THE VIDEOGRAPHER: The time is 2:44. We're going

3 off the record.

4    THE VIDEOGRAPHER: The time is 2:55 p.m. We're

5 back on the record.

6 BY MR. VISSER:

7    Q.    Mr. Moore, can you tell us when -- and maybe you

8 already have -- in advance of the time that you had told

9 Mr. Baker that he was going to be fired was your mind made up

10 what you were going to do?

11    A.    I don't remember. I surely can't pinpoint a day.

12    Q.    As you'd made the decision and communicated

13 Mr. Baker asked you to reconsider?

14    A.    Yes.

15    Q.    Is there anything that he could have said or done

16 then that would have changed your mind?

17    A.    I don't know. I really don't know. If he had said

18 something like, "I'll cooperate. I'll start doing things the

19 way you tell me to them. I'll start doing it. You won't

20 have to follow up with me," I don't know. I might have

21 changed my mind at that point. I don't know.

22    Q.    Is there anything that he could have said or done

23 after December 17, 2012 that would have changed your mind

24 about the decision that you had made?

25    A.    I guess it would be the same answer if a couple of

Page 131

1 days later he called back and wanted to visit about it again

2 and say that he wasn't -- he'd cooperate and do things the

3 way he was suppose to and -- yeah, there's a possibility. I

4 don't know.

5    Q.    That first week of January 2013, other employees

6 wanted to -- they wanted to know why Mr. Baker had been

7 terminated; right?

8    A.    Other --

9    Q.    Other members -- members at the membership meeting

10 in Dubuque at the special meeting?

11    A.    Yes.

12    Q.    Did you sense that the vast majority there were in

13 support of Mr. Baker?

14    A.    Yeah, the majority was probably in his favor. I

15 mean, I'd say we spoke but it wasn't an issue of his

16 representation to them. It was his -- administrative and

17 financial issues.

18    Q.    So is there anything -- is there any amount of

19 support came from the membership of Local 120 that would have

20 changed your mind about the decision that you had made after

21 December 17, 2012?

22    A.    No. I think you grow up in this business and people

23 will petition you to do this or petition you to do that, and

24 I think you have to rely on your own instincts and thoughts

25 and your own gut. You can't move about from petitions or --

Page 132

1 then you will not get anything done and I think Dave would

2 agree with that.

3    Q.    Okay. And if your mind would have been changed or

4 changeable somehow, you would have still then had Mr. Saylor

5 already hired to the position?

6    A.    That might not have been a problem because we would

7 -- we were going to be looking actively. We had just let the

8 two Slawsons go, and between them they probably did half of

9 business agents work. So it may have been that we had to ask

10 him to move to Des Moines or something like that but we never

11 considered it because it never become an issue. But he does

12 work in Des Moines now some.

13    Q.    During the period of you the trusteeship, did you

14 get the debts paid off?

15    A.    You're finally asking me something nice.

16    Q.    I want to give you a chance here.

17    A.    Yeah. We were 3.4 million dollars in debt, and we

18 had another $100,000 in immediate liabilities. And when we

19 left there, if you calculate 24 months later, the 3.4 million

20 was paid off; 1.2 million in the bank; no outside debt

21 and every one of our buildings rehabed, including the Dubuque

22 building.

23    Q.    Very good.

24    MR. VISSER: I don't believe that I have any further

25 questions of Mr. Moore.

Claim No. 6380067985

# Zurich

(Including but not limited to Fidelity & Deposit Company of Maryland, Zurich American Insurance Company, Colonial American Casualty and Surety Company, American Guarantee and Liability Insurance Company, Steadfast Insurance Company and Universal Underwriters Insurance Group; hereinafter "Company")

## Fidelity Proof of Loss Form

Teamsters Local Union No. 120 , hereinafter "Claimant", presents claim for loss under
(Name of Claimant/Insured)

Policy No. _____ related to Claimant's former employee(s) David Baker and Donald Walz
SSN#/s _____ employed in the position of Business agents for the period of time
beginning _____ and ending _____, said loss being discovered on the date of _____ by
_____. The following is a statement of the Claimant's loss and all sums due and owing because of Claimant's above named
employee(s) and the amounts stated below are the true net losses occurring during the period from _____ to _____.

### DETAILED STATEMENT OF CLAIM

(Attach original documentation supporting the claim to this form and return to Company.)

| DATE | DESCRIPTION OF ITEM | AMOUNT | TOTAL |
|---|---|---|---|
| 10/2005 - 11/2013 | David Baker's Improper Use of Credit Card | 22,897 64 | 22,897 64 |
| 3/2007 - 11/2012 | Donald Walz's Improper Use of Credit Card | 14,281 17 | 14,281 17 |
| | See Attached Spreadsheet | | |
| | (a) TOTAL LOSS | 37,178 81 | |
| | CREDITS: By Salary or commission....................... | | |
| | By retained earnings....................... | | |
| | Other credits, notes offsets, etc....................... | -0- | |
| | (b) TOTAL CREDITS....................... | | |
| | (a-b) NET LOSS | 37,178 81 | $37,178 81 |

State amount of other security, insurance, or indemnity against loss held in addition to aforementioned policy: N/A

In consideration of any payment of the claim, the undersigned hereby subrogates and assigns to the Company making any payment all right, title and interest in the property covered by the payment and further agrees to promptly turn over to the Company any and all such property which may be recovered at any time and any restitution that may be received by the Claimant, in accordance with the policy's terms and conditions.

State of MN
}SS.
County of Anoka

William A. Moore , being duly sworn, deposes and states that: she/he is the IBT Trustee of
Teamsters Local , the Claimant herein, having its main office at 9422 Ulysses St NE Blaine MN 55434 that the Claimant's former
employee(s) named herein did convert or cause to be converted, misappropriated or otherwise caused a covered loss equal to the amount of claim herein
indicated in this statement; that the above statements and all attachments constitute a complete and truthful record of all facts now known and nothing
material has been suppressed or withheld by Claimant; that Claimant has not accepted any security for or on account of same and that there are no
counterclaims, offsets or credits of any nature whatsoever other than those appearing in the statements above, that Claimant has fully complied with all the
conditions of the aforementioned policy issued by the Company; and that Claimant has read and fully understands the applicable fraud warnings on the
reverse of this form and freely signs this sworn statement with knowledge of the penalties for false sworn statements.

Subscribed and sworn to before me this 12th day of FEB , 2015

SEAL

JOHN MUEHLBAUER
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2018

OFFICER'S SIGNATURE

Printed Name: William A. Moore

Title: IBT Trustee

D004789

EXHIBIT
MOORE #18
12/14/15 TB
PENGAD 800-631-6989

## FRAUD WARNING NOTICE                                                    8/2013

### APPLICABLE IN ALABAMA

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

### APPLICABLE IN ALASKA

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

### APPLICABLE IN ARIZONA

For your protection, Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

### APPLICABLE IN ARKANSAS, DELAWARE, KENTUCKY, LOUSIANA, MAINE, MICHIGAN, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH DAKOTA, PENNSYLVANIA, RHODE ISLAND, SOUTH DAKOTA, TENNESSEE, TEXAS, VIRGINIA, and WEST VIRGINIA

Any person who knowingly and with intent to defraud any insurance company or another person, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact, material thereto, commits a fraudulent insurance act, which is a crime, subject to criminal prosecution and [NY: substantial] civil penalties. In LA, ME, TN and VA, insurance benefits may also be denied. NY Auto: In addition, any person who in connection with such application or claim knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the Department of Motor Vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.

### APPLICABLE IN CALIFORNIA

For your protection, California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

### APPLICABLE IN COLORADO

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

### APPLICABLE IN DISTRICT OF COLUMBIA

Warning: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.

### APPLICABLE IN FLORIDA

Pursuant to S. 817.234, Florida Statutes, any person who, with the intent to injure, defraud, or deceive any insurer or insured, prepares, presents, or causes to be presented a proof of loss or estimate of cost or repair or damaged property in support of a claim against an insurance policy knowing that the proof of loss or estimate of claim or repairs contains any false, incomplete, or misleading information concerning any fact or thing material to the claim commits a felony of the third degree, punishable as provided in S. 775.082, S. 775.083, or S. 775.084, Florida Statutes.

### APPLICABLE IN HAWAII

For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both.

### APPLICABLE IN IDAHO

Any person who knowingly and with the intent to injure, defraud, or deceive any insurance company files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### APPLICABLE IN INDIANA

A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

### APPLICABLE IN MARYLAND

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### APPLICABLE IN MINNESOTA

A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

### APPLICABLE IN NEVADA

Pursuant to NRS 686A.291, any person who knowingly and willfully files a statement of claim that contains any false, incomplete or misleading information concerning a material fact is guilty of a felony.

### APPLICABLE IN NEW HAMPSHIRE

Any person who, with the purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

### APPLICABLE IN OHIO

Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

### APPLICABLE IN OKLAHOMA

WARNING: Any person who knowingly and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

### APPLICABLE IN WASHINGTON

It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

D004790

# Teamsters Local 120
## Improper Credit Card Charges and/or Missing Receipts

| Date | Person | Location | Purpose | Attendees | Amount | Note |
|---|---|---|---|---|---|---|
| 10/10/11 | B. Rademacher | McVay's Café & Bar | Meeting with Emerson on company assignments | Slawson, Sr., Slawson, Jr., B. Emerson | 62.25 | In-town, staff only |
| 10/22/11 | B. Rademacher | Spirits (Holiday Inn) | Bar & parking meeting and such | Slawson, Sr., Slawson, Jr., A. Mikethaym, T. Chester | 96.00 | All beverages on tab; bill questionable (alcohol only) |
| 10/23/11 | B. Rademacher | Teamster's Lounge | Gaming audit meeting | D. Walz, B. Nowak, Slawson, Sr., M. Riketovs, Slawson, Jr., Bar & Gaming Manager (not legible), Gaming Bookkeeper (not legible) | 61.00 | In-town for D. Walz, B. Nowak, per employees |
| 10/28/11 | B. Rademacher | Cowboy Jacks | US Foods contract negotiations | C. Fulton, D. Duff, B. Westbrook, Slawson, Jr., 3 Stewards (not legible) | 185.99 | 65% alcohol |
| 10/29/11 | B. Rademacher | Wild Bills Sports Saloon | US Foods contract negotiations | C. Fulton, D. Duff, T. Erickson, Slawson, Jr., Stewards (not legible) | 155.35 | 32% alcohol |
| 04/21/11 | B. Rademacher | Teamster's Lounge | Super Valu product on standards meeting | D. Westbrook, D. Walz, B. Nowak, 5 bar employees, Super Valu Stewards | 270.66 | 94% alcohol |
| 04/27/11 | B. Rademacher | Ole Piper Inn | Sysco DSNT - rest not legible | T. Erickson, S. Sullivan, 2 members | 95.45 | Alcohol only |
| 05/10/11 | B. Rademacher | Delta | NWA baggage fee | Self | 40.00 | No receipt |
| 05/26/11 | B. Rademacher | Ole Piper Inn | Membership meeting | Semkows, Slawson, Jr., D. Walz, B. Nowak, T. Erickson, B. Emerson, B. Lesidas, S. Sullivan, D. Baker, 14 other members | 94.38 | alcohol only |
| 06/03/11 | B. Rademacher | Champps American | Burns grievance meeting | Steward, 1 member | 29.34 | 79% alcohol |
| 06/23/11 | B. Rademacher | Holiday Inn/Grill Lakes | O'Reilly contract negotiations | T. Erickson, 2 members | 250.00 | No itemized receipt |
| 10/28/11 | B. Rademacher | Lindsage Iron Pub | O'Reilly Auto Parts contract negotiations | T. Wild (legal counsel), 5 members | 69.26 | 64% alcohol |
| 17/07/11 | B. Rademacher | Papa Johns | O'Reilly contract negotiations | T. Erickson, S. Culver, M. Edwards | 64.56 | No itemized receipt |
| 05/27/11 | B. Rademacher | Axel's Clearwater | Wholesale Produce Contract | Keith Halverson, Jim MacMahon | 52.26 | 30% of bill alcohol |
| 06/21/11 | B. Rademacher | Ole Piper Inn | Space grievance hearings | L. Miller, N. Joseph, T. Erickson | 5.49 | In-town for Stahar/Mamapolis employees |
| 05/12/08 | D. Baker | McDonald's | Iowa Daisy JSC | Self | 238.64 | In-town, staff only |
| 07/13/08 | D. Baker | Time Out Sports Bar | Local 120 Stewards training | 13 people listed (including D. Baker) | 40.50 | K. Baker in attendance (wife of D. Baker) |
| 10/13/08 | D. Baker | Guppy's | Unknown | Unknown | 7.63 | No receipt |
| 12/17/08 | D. Baker | Kwik Star | Local 120 Executive Board meeting | Self | 75.60 | In-town, staff only |
| 01/03/09 | D. Baker | DJ's Steakhouse | Standard Forwarding Co. negotiations | Self | 77.14 | 51% of bill is alcohol |
| 01/03/09 | D. Baker | Axel's Chophouse | Local 120 meetings | John Rosenthal, Jay McDonald, Kevin Spitzer, Brad Sr., Brad Jr., B. Rademacher, Erickson, S. Sullivan, K. Black, J. Perry, J. Batticus (All these names in bpun text) D. Powell, D. Westerkamp, J. Nordaby, T. Sacnester, R. Johnson (A. Laird), B. Logan (AL), Hange-carnachi Jean's Pool, Self | 566.00 | 61% of bill is alcohol |
| 04/15/09 | D. Baker | Ole Piper Inn | General Membership Meeting | Self | 163.50 | Bill stored at 11:47 a.m. on Friday the 17th. Scheduled per Trustees Dwyer/Moore |
| 05/30/09 | D. Baker | Bally's Las Vegas | Unity Conference | | 59.52 | Room upgrade |
| 06/06/09 | D. Baker | 72 West | IRT Central Region Freight, JAC | Brad Sr., Brad Jr., Name not legible | 192.75 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 06/06/09 | D. Baker | Showcase Axel's Sports Bar | IRT Central Region Freight, JAC | Brad Sr., Brad Jr., Jerry Younger | 211.16 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 05/11/09 | D. Baker | Ole Piper Inn | Executive Board Meeting | Brad Sr., Brad Jr., J. Rosenthal, M. Riketovs, J. Rademacher, B. Lesidas, A. Laird | 55.07 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 06/23/09 | D. Baker | Okoboji Grill | UPS JSC | Self | | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |

2

P-App. 20

D004791

Case 2:14-cv-01027-LRR   Document 23-3   Filed 01/08/16   Page 22 of 65

# Teamsters Local 120
## Improper Credit Card Charges and/or Missing Receipts

| Date | Cardholder | Vendor | Person(s) | Purpose | Amount | Notes |
|---|---|---|---|---|---|---|
| 01/23/09 | D. Baker | Trail Valley Golf Course | Unknown | Unknown | 25.60 | Missing receipt |
| 07/13/09 | D. Baker | Vista Liquor Store | No one listed | JC 32 Meeting in Dubuque, Iowa | 359.22 | Alcohol only |
| 07/27/09 | D. Baker | Lacoma Golf | N. Kosolvyk, J. Kosolvyk, J. Rosenthal, D. Miller | JC 32 Meeting in Dubuque, Iowa | 271.31 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 07/28/09 | D. Baker | Holiday Inn | J. Rosenthal | JC 32 Meeting in Dubuque, Iowa | 100.36 | In-town, staff only |
| 08/02/09 | D. Baker | Holiday Inn | Self | UPS JSC | 59.65 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 08/04/09 | D. Baker | Thai Cafe | Self | UPS JSC | 27.95 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 08/10/09 | D. Baker | Holiday Inn | Greg Valentine | Bill Winning Atty. Hearing | 17.40 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 09/07/09 | D. Baker | Sunshine Family Restaurant | J. Rosenthal, S. Cirks, 4 names with (?) next to them | Labor Day Parade (120 participated) | 93.63 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 09/14/09 | D. Baker | Harry Carey's | R. Johnson, Brad Sr., J. Rademacher | IBT Central Region Freight, JAC | 438.00 | Over $100.00 per person, excessive |
| 09/23/09 | D. Baker | Dockside | J. Rademacher, T. Nather, J. Erikson, J. Pitts, B. Jenkins, A. Rosenthal | (?) | 77.00 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 09/29/09 | D. Baker | Dragon House East | Self | JA JSC Meetings UPS/Freight | 27.80 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 09/29/09 | D. Baker | Champps Americana | J. Rosenthal, Pat Lynch (IBT) | DRIVE Campaign | 46.67 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 10/06/09 | D. Baker | Zoros Gyro | No Select | DRIVE Campaign | 18.91 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 10/09/09 | D. Baker | Elements | N. Valentine, Mike (?), Tim Cole, Robert Stemasek, Joe Holdredt | Kevin Deardovel Retirement | 53.23 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 10/17/09 | D. Baker | KFC | Kathy Baker | 749 Merger Meeting | 18.30 | Paid for spouse |
| 10/22/09 | D. Baker | Sunshine Family Restaurant | 2 names not legible | SLBG Negotiations | 31.67 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 10/23/09 | D. Baker | Governor's Lodge | J. Rosenthal | UPS JSC | 51.92 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 10/27/09 | D. Baker | Governor's Lodge | J. Rosenthal, R. Ledger | UPS JSC | 39.21 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 11/24/09 | D. Baker | Quality Inn | Unknown | Unknown | 45.23 | Missing receipt |
| 12/06/09 | D. Baker | Boone Rosement | Self | IBT Central Region Freight, JAC | 11.73 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 12/07/09 | D. Baker | Harry Carey's | J. Nather, B. Rademacher, Name not legible | Freight JAC | 419.16 | Over $100.00 per person, excessive |
| 12/11/09 | D. Baker | Manchia's Char House | K. Sayor, R. Johnson, Brigett Johnson, K. Stallentip, V. Peters | JC 32 Meeting & Xmas Party | 237.04 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 12/17/09 | D. Baker | Time Out Sports Bar | J. Rosenthal, Brad Sr. | Executive Board Meeting | 106.27 | In-town for lifetime employee, No itemized receipts, instructed by DOL in May 2009 to provide itemized receipts |
| 12/23/09 | D. Baker | Harry Carey's | J. Rosenthal | Standard Forwarding Co. negotiations | 231.83 | Over $100.00 per person, excessive |
| 12/29/09 | D. Baker | Burger King | Self | Joint Council 32 DRIVE committee meeting | 11.00 | No itemized receipt, instructed by DOL in May 2009 to provide itemized receipts |
| 01/07/10 | D. Baker | Rovie Star | Self | Organizing campaigns | 11.32 | In-town, staff only |
| 01/11/10 | D. Baker | Marion Italian Restaurant | R. Ledger, K. Sayler | | 41.42 | No itemized receipt |
| 01/22/10 | D. Baker | Wilkey's Tavern | Slawson, Jr., N. Kosolvyk, Jr., N. Kosolvyk, B. Rademacher, T. Ericson, R. Knutson, wife of R. Slawson, Jr., N. Kosolvyk, C. Knutson (wife of R. Knutson), V. | Merger meeting with 749 | 163.25 | Alcohol only, in-town, staff only, for R. Knutson - paid for wife of R. Knutson |
| 01/27/10 | D. Baker | Kitsana's | Knutson (wife of R. Knutson) | Merger meetings with 749 | 485.16 | Paid for wife of R. Knutson |

3

Case 2:14-cv-01027-LRR - Document 23-3 - Filed 01/08/16 - Page 23 of 65

D004792

# Teamsters Local 120
## Improper Credit Card Charges and/or Missing Receipts

| Date | Name | Establishment | Attendees | Purpose | Amount | Notes |
|---|---|---|---|---|---|---|
| 02/26/10 | D. Baker | Dragon House East | Self | Merger meetings with 749 and Iowa SA meetings | 18.00 | No itemized receipt |
| 03/06/10 | D. Baker | Sunshine Family Restaurant | J. Rosenthal, D. Everett (BFI), K. Saylor, R. Gulcash | Meetings from Crookat Barrel from at Diamond Casino | 53.35 | No itemized receipt |
| 02/22/10 | D. Baker | Governor's Lodge | J. Rosenthal, M. Moorkonk, R. Rockwell (AFL-CIO), D. Miller (CB0) | Iowa UPS JSC meetings | 241.74 | No itemized receipt |
| 03/07/10 | D. Baker | TRU Bar-Udo Reach Report | K. Baker, Stawson, Sr., Y. Stawson, D. Avelyn (SS4), S. Avelyn (SS4), J. Lang (47) | | 96.52 | Alcohol, only - also paid for wives: Kathy Baker is wife of D. Baker - Yvonne Stawson is wife of Stawson, Sr - Imoger of Linda Avelyn |
| 03/28/10 | D. Baker | Sam Seneca's Tavern | K. Baker, Stawson, Sr., Y. Stawson, Erickson, E. Racemacher, 2 people (from 559 (not listed)), N. Cone (not listed), K. Adams (not listed) | Freight JAC | 813.49 | Paid for wives - Yvonne Stawson is wife of Stawson, Sr - Kathy Seneca's wife of D. Baker |
| 03/10/10 | D. Baker | Chest House | D. Avelyn (SS4) | IBT Central Region Freight JAC and SS4 merger discussions | 180.11 | No itemized receipt |
| 03/14/10 | D. Baker | Crabby Bills | Self | IBT Central Region Freight JAC | 31.66 | No itemized receipt |
| 03/15/10 | D. Baker | Crabby Bills | No one listed | More listed | 55.99 | Receipt shows 4 people |
| 03/16/10 | D. Baker | Salt Rock Grill | Self | UPS JAC | 119.08 | Over 100.00/person - 2 entrees and 2 appetizers on itemized receipt |
| 03/16/10 | D. Baker | Rover Scand | Self | UPS JAC | 11.00 | No itemized receipt |
| 03/22/10 | D. Baker | Nudgeway Tavern | J. Richardson, N. Cox, D. Hockels, B. Wessels, D. Frencel, S. Klosterman | Flynn Ready-Mix negotiating committee | 52.03 | No itemized receipt |
| 03/25/10 | D. Baker | Kwik Star | Self | Joint Council 32 meetings and Local 120 Executive Board | 9.52 | In-town, staff only |
| 03/29/10 | D. Baker | Governor's Lodge | Self | Iowa Dairy JSC and Iowa UPS JSC | 25.90 | No itemized receipt |
| 04/05/10 | D. Baker | 72 West Sheraton | Baker, D. Avelyn SS4, B. Raver, 413, R. Pitra 200 | UPS Freight Dinner | 335.57 | 82% of bill is alcohol |
| 04/15/10 | D. Baker | Kwik Star | Self | Breakfast - Executive Board meeting Boston, MN | 6.71 | In-town meal |
| 04/16/10 | D. Baker | Ole Piper Inn | B. Rademacher, M. Koochryk, Brad Jr., B. Jenkins, R. Loeser, K. Alkka, S. Jackson, S. Powell, J. Rosenthal, R. Knudtson, C. Hubner, T. Erickson, P. Walker, "Troy", "Ault", John Baldok | Dinner & Refreshments 120 general membership meeting | 363.29 | In-town for Blaine, A/B staff, $15 of bill is alcohol |
| 04/22/10 | D. Baker | Kwik Star | Lunch | Steve Parks Retirement Supervillvj MN | 6.90 | In-town meal |
| 04/28/10 | D. Baker | Latin King Restaurant | J. Rosenthal | UPS JSC | 80.26 | No itemized receipt |
| 05/03/10 | D. Baker | Sully's Bar-Bally's Las Vegas | P. Walker, D. Schtuns, R. Johnson, R. Knudtson, C. Hubner, G. Pitra, N. Cone (Delta Dental) | Utility Conference | 270.00 | Alcohol only |
| 05/10/10 | D. Baker | Steakhouse-Bally's Las Vegas | G. Pitra, P. Walker, P. Slattery, C. Hubnick | Utility Conference | 518.86 | Over 100.00/person |
| 05/17/10 | D. Baker | Kwik Trip | Self | UPS JAC | 7.77 | In-town, staff only |
| 05/18/10 | D. Baker | Pfister Hotel | Stawson, Sr., C. Hubner, R. Mouritston, D. Holivett BOB, 4 people from 29 (names on receipt) | Local 120 Executive Board meeting | 247.73 | 72% alcohol |
| 05/21/10 | D. Baker | Kwik Star | Self | IBT Bakery Conference | 6.54 | In-town, staff only |
| 06/25/10 | D. Baker | Liberty Tavern Restaurant-Hilton Omaha | D. Avelyn (SS4) | Lunch JC 11 meetings Duluth | 152.83 | 3 (perhaps 4) entrees on itemized receipt |
| 06/25/10 | D. Baker | Coffee Cabin | Self | IBT Bakery Conference | 16.70 | No itemized receipt |
| 06/26/10 | D. Baker | Johnny's Italian Steakhouse | Jim Sneard and Stoney Avelyn SS4 | IBT Bakery Conference | 167.80 | No itemized receipt |
| 06/26/10 | D. Baker | Hilton Omaha (room service) | Self | IBT Bakery Conference | 54.50 | 2 entrees on itemized receipt |
| 06/26/10 | D. Baker | Pacific Springs | J. Rosenthal, Scott Gusch and Todd Bell SS4 | IBT Bakery Conference | 43.20 | No itemized receipt |

4

Case 2:14-cv-01027-LRR   Document 23-3   Filed 01/08/16   Page 24 of 65

D004793

# Teamsters Local 120
## Improper Credit Card Charges and/or Missing Receipts

| Date | Name | Vendor | Attendees | Event | Amount | Note |
|---|---|---|---|---|---|---|
| 07/08/10 | D. Baker | [Company] | [Unknown] | Unknown | 23.95 | No receipt |
| 07/16/10 | D. Baker | RWM Star | Self | 120 Executive Board meeting | 3.76 | In-town, staff only |
| 07/17/10 | D. Baker | RWM Star | | 120 Executive Board meeting | 4.81 | In-town, staff only |
| 07/17/10 | D. Baker | Gat-Prior Inn | J. Rosenthal, Slawson, Jr. | 120 Executive Board meeting | 47.46 | 50% alcohol - In-town, staff only for Slawson, Jr. |
| 07/24/10 | D. Baker | Lacoma Golf | | Iowa JAC meetings | 35.00 | In-town, staff only |
| 07/24/10 | D. Baker | Lacoma Golf | M. Klockowa, J. Klockowa, Rosenthal, D. Miller (?38), J. Lunch (IBT), T. Flynn, J. Younker (Central | Iowa JAC | 191.00 | No itemized receipt |
| 07/28/10 | D. Baker | Holiday Inn DBQ Restaurant | Unknown | Unknown | 80.44 | No receipt |
| 07/29/10 | D. Baker | Hilton Chicago Ohare | Self | IBT Dairy Conference | 151.43 | Over 100.00 person - appears to be 2 entrees - also purchased bottle of wine for 55.00 |
| 07/29/10 | D. Baker | Cork's Contract (Chicago) | Self | IBT Dairy Conference | 19.25 | 2 entrees on itemized receipt |
| 07/30/10 | D. Baker | Tapenade | Self | IBT Dairy Conference | 20.76 | 2 entrees on itemized receipt |
| 07/30/10 | D. Baker | Marriott Fairoms Lounge | Brad Sr., M. Klockowa, D. Walz, T. Strickland 582 | IBT Dairy Conference | 217.68 | Alcohol only |
| 08/01/10 | D. Baker | Marriott Fairoms Lounge | Brad Sr., M. Klockowa, B. Rademacher, D. Walz, T. Strickland | IBT Dairy Conference | 107.67 | Alcohol only |
| 08/20/10 | D. Baker | Time Out Sports Bar | J. Rosenthal, R. Gulyash (Steward) | Pre Dinner Drinks Local 120 meetings & events (Blaine) | 35.70 | Alcohol only |
| 08/27/10 | D. Baker | Courtside | Brad Sr., B. Racimacher, R. Walker, B. Jenblal, T. Erickson, R. Johnson, Randl Sr., Vick Peterson | Dubuque Picnic & Prairie Farms Negotiations | 294.30 | 35% of bill is alcohol, Unknown for Dubuque staff |
| 09/15/10 | D. Baker | Envelopes Jenn's Special Bar | Envelope of Johnson | IBT Central Region Freight JAC | 29.25 | Alcohol only |
| 09/26/10 | D. Baker | Bootside | J. Rosenthal | Ebner's JAC meeting | 69.59 | 75% of bill is alcohol |
| 10/19/10 | D. Baker | Highway 20 Auto Truck Plaza | Terry Werner, Les Koepperich, Chris McQuillen, Steve Kennedy | Lunch Finale Neg. Committee | 42.15 | No itemized receipt |
| 10/25/10 | D. Baker | Highway 20 Auto Truck Plaza | Self | Bill Clinton Event | 42.46 | No itemized receipt |
| 10/28/10 | D. Baker | Highway 20 Auto Truck Plaza | Les Koepperich, Steve Kennedy, Terry Werner, Chris McQuillen | Lunch Finale Neg. Committee | 59.32 | No itemized receipt |
| 10/31/10 | D. Baker | RWM Star | Self | Executive Board - Membership Meeting (Blaine) | 9.18 | In-town meal (45 miles from Dubuque) |
| 11/10/10 | D. Baker | Zoros Gyros | 18 people on sign in sheet | Nike Fourth Ford & Motors strikers meeting | 155.50 | No itemized receipt |
| 11/23/10 | D. Baker | Grand River Center | 18 people on receipt | DMLAC awards ceremony/dinner meeting | 241.35 | No itemized receipt |
| 11/25/10 | D. Baker | Dragon House East | Self | NICA negotiations and RTEL meeting | 21.00 | No itemized receipt |
| 11/30/10 | D. Baker | Highway 20 Auto Truck Plaza | K. Syzton, J. Rosenthal | West Dubuque Schools organizing meeting | 37.25 | No itemized receipt |
| 12/04/10 | D. Baker | 72 West Sheraton | Slawson, Sr., Slawson, Jr., B. Rademacher, B. Woodaberg, T. | IBT Central Region Freight JAC | 164.00 | In-town, staff only |
| 12/06/10 | D. Baker | McDonald's | Self | IBT Central Region Freight JAC | 8.99 | In-town, staff only |
| 12/06/10 | D. Baker | Marina Italian Restaurant | K. Syzton, K. Wheit | Prairie Farms Dairy Firm Firm | 80.93 | No itemized receipt |
| 12/14/10 | D. Baker | Holiday Inn DBQ Restaurant | J. Reikd, J. Reuse | Amerifresh negotiations | 21.00 | No itemized receipt |
| 12/16/10 | D. Baker | Casey's General Store | Self | 120 Executive Board meeting | 3.44 | In-town, staff only |
| 01/23/11 | D. Baker | Dragon House East | Self | Iowa Dairy JAC | 77.15 | No itemized receipt |
| 01/26/11 | D. Baker | Holiday Inn DBQ Restaurant | S. Fisher, B. Hetnard, J. Hieke, D. Burkhalter | Amerifood Logistics negotiating committee | 77.50 | Alcohol only |
| 01/27/11 | D. Baker | Check-In Way | K. Syzton | Amerifood contract ratification | 36.23 | In-town Executive Board members and staff only |
| 02/04/11 | D. Baker | Judo Beach Resort | Pat Flynn ?tG, Danny Jordyn and Jim Shpard ?54, Coco Gbeecy 135 | Freight JAC Florida | 73.99 | Alcohol only |
| 02/07/11 | D. Baker | Lido Beach Resort | Pat Flynn ?tG, Danny Jordyn and Jim Shepard 554, Kevin McDonald DMCA, Ron Hounerton 41 | Freight JAC Florida | 270.34 | 35% of bill is alcohol (reimbursed $20.25 for wife) |

D004794

Case 2:14-cv-01027-LRR   Document 23-3   Filed 01/08/16   Page 25 of 65

# Teamsters Local 120
## Improper Credit Card Charges and/or Missing Receipts

| Date | Employee | Vendor | Attendees | Event / Purpose | Amount | Notes |
|---|---|---|---|---|---|---|
| 03/01/11 | D. Baker | Lodo Beach Resort | Pat Flynn 710, Danny Avelyn and Jim Stezzel 554, Tim Meadows 690, John Lange 41, Don Hoverton 41, B. Emerson, Brad Jr., B. Bodenschatz, B. Jenkins, D. Weir, T. Erickson, R. Woodward, J. Rosenthal, K. Staltonsta, Prostrom, G. Gabbstrom, Ann Hecht, Steve Powell, Steve Sullivan, Kurt Block, B. Nowak | Freight JAC Florida | 468.28 | 85% of bill is alcohol (reimbursed $77.00 for w/e) |
| 02/26/11 | D. Baker | Ole Piper Inn (NSP) | Ind | Food / Refreshments after general membership meeting in Ind | 554.19 | 85% of bill is alcohol |
| 02/28/11 | D. Baker | Governor's Lodge | | Dairy/UPS/Freight Iowa State JAC | 12.72 | 61% of bill is alcohol |
| 03/26/11 | D. Baker | Stan Schmitz | Jim Sheard and Danny Avelyn 554 | Freight JAC Florida | 1,853.89 | No itemized receipt |
| 04/08/11 | D. Baker | American Airlines | Self | Progressive Processing (CTW) | 1,152.89 | First Class ticket (was lots kits reimbursement?) |
| 05/01/11 | D. Baker | Miller Time Pub | Brad Sr., Crdit Schizel 413, Scott Severson 413, Jerry Conner 279 | UPS JAC | 255.25 | 72% of bill is alcohol |
| 05/22/11 | D. Baker | Kwik Star | J. Rosenthal | Membership meeting | 9.20 | In-town, staff only |
| 06/01/11 | D. Baker | Pacific Springs Golf Course | Jim Sheard, Danny Avelyn, Scott Ulrech, Ann Ortmann, Bryan Rozel Local 554, Pat Flynn 710 | Local 554 Scholarship event | 73.60 | 92% of bill is alcohol |
| 06/27/11 | D. Baker | Timmerman Supper Club | J. Rosenthal, Scott Soldon, Atty. | City of Dubuque Transit, Witness Prep | 161.29 | No itemized receipt |
| 06/27/11 | D. Baker | Marios Italian Restaurant | J. Rosenthal, Scott Soldon, Atty. | City of Dubuque Transit, Witness Prep | 20.00 | No itemized receipt |
| 06/23/11 | D. Baker | Lacoma Golf | J. Rosenthal, J. Alsovino, J. Rosenthal, J. McDonald and 4 others | DALMC Golf Event | 67.73 | Alcohol only |
| 07/21/11 | D. Baker | Hy Vee | Unknown | Unknown | 254.69 | No receipt |
| 07/25/11 | D. Baker | Lacoma Golf | J. Rosenthal, J. McDonald and 4 others | Iowa JAC meetings | 256.44 | No itemized receipt, appears to be alcohol |
| 07/26/11 | D. Baker | Van's Liquor Store | Unknown | Unknown | 314.06 | No receipt |
| 08/24/11 | D. Baker | Holiday Inn | R. Johnson, J. Walker | Dubuque Picnic | 76.50 | No itemized receipt, appears to be alcohol |
| 08/24/11 | D. Baker | Holiday Inn | Brad Sr., J. Rosenthal, P. Walker | Dubuque Picnic | 20.25 | No itemized receipt, appears to be alcohol |
| 08/27/11 | D. Baker | Holiday Inn | R. Johnson, J. Rosenthal, P. Walker, Gary Manthey | Dubuque Picnic | 96.05 | No itemized receipt, appears to be alcohol |
| 08/30/11 | D. Baker | Atrium Lobby Bar | J. Rosenthal, T. Cornelius 682, Scott (?) 668, Lasty (?) | Not listed | 68.26 | 97% of bill is alcohol |
| 11/15/11 | D. Baker | Ole Piper Inn (NSP) | 12 Executive Board and Staff, 4 members | Blaine general membership meeting | 661.44 | 93% of bill is alcohol |
| 11/22/11 | D. Baker | Caroline's Restaurant | J. Rosenthal and 4 members | DALMC Annual Awards Dinner | 112.00 | Alcohol only |
| 12/04/11 | D. Baker | Timmerman Supper Club | Ryne McCoy, Attorney | El Barge Services Arbitration | 77.999 | No itemized receipts |
| 12/12/11 | D. Baker | McDonald's | Self | IBT/Central Region Freight JAC Rosemont, IL | 10.03 | In-town, staff only |
| 12/14/11 | D. Baker | The Uffey (NSP) | John Rosenthal | Joint Council 32 meetings | 73.31 | 79% of bill is alcohol |
| 12/19/11 | D. Baker | Moncini's Chat House (NSP) | 18 Executive Board and staff | Joint Council 32 meetings | 554.34 | No itemized receipt, appears to be alcohol. In-town for other Local 120 employees |
| 12/20/11 | D. Baker | Van's Liquor Store | No one listed | Office Christmas open house | 407.851 | 100% alcohol and mixer |
| 12/22/11 | D. Baker | Kwik Star | Self | Local 120 election - Blaine | 3.81 | In-town, staff only |
| 12/28/11 | D. Baker | Kwik Star | Self | Local 120 meetings in Blaine on 11/29 | 6.58 | In-town, staff only |
| 01/06/12 | D. Baker | IPASS Auto Replenish | Unknown | Unknown | 40.00 | No receipt |
| 01/07/12 | D. Baker | Country Junction | 54 people on sign-in sheet | West Dubuque School/Local 120 Christmas party | 393.25 | 94% alcohol |
| 01/25/12 | D. Baker | Marios Italian Restaurant | R. Ledger, S. Suttery | Amadeo organizing campaign - Delhi and Manchester, IA | 34.72 | No itemized receipts - in-town, staff only for D. Baker |

P-App. 24

D004795

Case 2:14-cv-01027-LRR   Document 23-3   Filed 01/08/16   Page 26 of 65

# Teamsters Local 120

## Improper Credit Card Charges and/or Missing Receipts

| Date | Cardholder | Vendor | Attendees | Purpose | Amount | Notes |
|---|---|---|---|---|---|---|
| 02/08/12 | D. Baker | Norton | Unknown | Unknown | 35.99 | No receipt - appears to be annual anti-virus subscription renewal |
| 02/15/12 | D. Baker | House of Cicero | J. Rosenthal, K. Saylor | Local 120 meetings in Maine | 57.18 | 59% alcohol |
| 04/28/12 | D. Baker | Landmark Restaurant | Self | Iowa UPS JSC | 13.90 | No itemized receipt |
| 03/06/12 | D. Baker | The Bar (Lido Beach Resort) | P. Flynn (712), J. Sheard (554) | IBT Central Region Freight JAC | 18.92 | Alcohol only - on hotel bill |
| 03/06/12 | D. Baker | Chart House | P. Flynn (712), J. Sheard (554) | IBT Central Region Freight JAC | 344.74 | 57% alcohol |
| 03/05/12 | D. Baker | Tiki Bar (Lido Beach Resort) | P. Flynn, J. Sheard, S. Sullivan, Sullivan, Jr., P. Walker | IBT Central Region Freight JAC | 533.65 | 53% alcohol - on hotel bill - D. Baker charged 73.59 of this bill though to his personal VISA |
| 03/27/12 | D. Baker | Ramada Inn | Self | Joint Council 32 meetings | 65.69 | No itemized receipts |
| 03/25/12 | D. Baker | Kwik Star | Self | Joint Council 32 meetings | 7.02 | In-town, staff only |
| 03/23/12 | D. Baker | Governor's Lodge (Quality Inn) | J. Thomas (238), C. Tienhart (IR House Rep) | UPS JSC and Freight JSC | 30.75 | Alcohol only - on hotel bill |
| 03/26/12 | D. Baker | Culver's #320 | Self | UPS JSC and Freight JSC | 6.84 | In-town, staff only |
| 03/26/12 | D. Baker | Bally's Las Vegas | Unknown | Unknown | 95.20 | No receipt - appears to be Unity Conference room deposit |
| 04/12/12 | D. Baker | Zoro Gyros | 24 members on sign-in sheet | Bonus/return fees for Dubuque membership meeting | 326.08 | No itemized receipt |
| 05/21/12 | S. Baker | Sambetti's | K. Quick (554), S. Utech (554), M. Ballard (90), R. Nevin (90) | Iowa Dairy JSC and Iowa Teamsters political meeting | 50.95 | No itemized receipt |
| 05/20/12 | D. Baker | Arby's | Unknown | Unknown | 8.55 | No receipt |
| 06/11/12 | D. Baker | McDonald's | Self | IBT Central Region Freight JAC and other credit meetings | 7.87 | In-town, staff only |
| 04/11/12 | D. Baker | Harry Carey's | D. Avelyn (554), one person from Local 41 (not legible), 2 people from Local 89 (not legible) | IBT Central Region JAC - split receipt with Local 89 | 255.40 | No itemized receipt |
| 06/26/12 | D. Baker | Landmark Restaurant | Self | UPS JSC and Iowa political meeting | 17.71 | No itemized receipt |
| 07/10/12 | D. Baker | TGI Fridays | J. Rosenthal, 6 people from other locals | Master Dairy JAC | 231.28 | 54% alcohol |
| 07/22/12 | S. Baker | Timmerman Supper Club | Stevenson, Jr., K. Baker (Mitle), 4 people from Local 554, J. Sheard, D. Avelyn, S. Utech, K. Ostrowski, 2 people from Central States (A. | Iowa Teamsters meeting - split receipt with K. Ostrowski (554) | 353.62 | No itemized receipt - paid for wife (Kathy Baker) |
| 07/22/12 | D. Baker | Lacoma Golf | Stevenson, Sr., M. Klootwyk, J. Klootwyk, J. Rosenthal, G. Mertz | Iowa Teamsters meetings and Iowa JSC meetings | 114.22 | No itemized receipt |
| 07/22/12 | D. Baker | Lacoma Golf | J. Rosenthal, J. Stenwick (G. Mertz, McDonald, J. Wirtz, T. Danihel, T. Rosen, N. Hamad (IBEW 704) | Iowa Teamsters JSC meetings and political meetings | 123.00 | No itemized receipt |
| 07/24/12 | D. Baker | Iowa Liquor Store | N/A | Iowa Teamsters reception/dinner (Iowa Lodge Fish Club | 327.94 | Alcohol only |
| 07/25/12 | D. Baker | Holiday Inn BBQ Restaurant | J. Rosenthal | Iowa Freight JSC meetings | 13.91 | No itemized receipt - in-town, staff only |
| 08/02/12 | D. Baker | Cherry Capital Airport Coffee | Self | UPS JSC | 3.21 | No itemized receipt |
| 08/19/12 | D. Baker | Majestic Oaks Golf Club | B. Jenkins, J. Rosenthal, R. Gulnash (Steward), M. Faltos (UPS retiree) | Local 120 golf tournament | 37.80 | 73% alcohol |
| 08/24/12 | D. Baker | Marcos Inc. | Stevenson, Sr. | Local 120 pizza | 89.24 | No itemized receipt - in-town, staff only for D. Baker |
| 08/27/12 | D. Baker | Prairie Meadows | J. Rosenthal, G. Durham (238), G. Hills (238) | Iowa JSC meetings | 34.00 | Alcohol only - on hotel bill |
| 08/28/12 | D. Baker | Prairie Meadows | Self | Iowa UPS JSC meetings | 9.49 | No itemized receipt |
| 09/10/12 | D. Baker | 72 West | Stevenson, Jr., R. Oline (89), T. Blechko, J. Sheard (554), D. Avelyn (554) | IBT Central Region | 123.50 | Alcohol only - on hotel bill |
| 09/10/12 | D. Baker | Dan's Oasis | Self | Freight JAC / IBT Central UPS Freight 2-man meetings | 16.41 | No itemized receipt - in-town, staff only |
| 09/10/12 | D. Baker | Harry Carey's | P. Johnson | UPS and UPS Freight 2-man meetings | 269.82 | Over 100.00/person |

7

# Teamsters Local 120
## Improper Credit Card Charges and/or Missing Receipts

| Date | Name | Establishment | Who | Purpose | Amount | Comment |
|---|---|---|---|---|---|---|
| 09/26/12 | D. Baker | McDonald's | Self | UPS and UPS Freight 2-man meetings (negotiations) | 6.35 | Subpeon, staff only |
| 09/25/12 | D. Baker | Timmerman Supper Club | S. Solder | Arbitration vs. City of Dubuque (Nagorski) | 149.08 | No itemized receipt |
| 10/11/12 | D. Baker | Zorn Gyros | 25 people on sign-in sheet | Dubuque membership meeting | 264.79 | No itemized receipt |
| 11/06/12 | D. Baker | Courtside | J. Rosenthal, & other people | Volunteers for 2012 election | 179.05 | 67% alcohol |
| 11/24/12 | D. Baker | UPS Auto Rental(s) | Unknown | Unknown | -40.00 | No receipt - "Automatic charge every year" handwritten on statement |
| 03/24/07 | D. Weiz | Sabinos Pizza | Unknown | Unknown | 3.00 | Missing receipt |
| 04/28/07 | D. Weiz | Casino Bar | D. Gymer, S. Blatterbauer | Unity Conference | 27.00 | Appears to be alcohol only |
| 04/29/07 | D. Weiz | Sully's Bar | S. Blatterbauer, M. Kosovych | Unity Conference | 58.00 | Appears to be alcohol only |
| 11/18/07 | D. Weiz | Four Points | Brad Jel, D. Gymer, M. Kosovych, Earl Mathison (member & wife of D. Gymer (BA), 4 members (B. Martin, T. McMullin, R. Frazer, B. Novak) | Local 120 E-Board and membership meeting (Blaine) | 108.00 | 2K-town for Blaine, MH staff |
| 12/14/07 | D. Weiz | Holiday Inn | | Joint Council meeting and Christmas party - Stewards seminar and reception | 27.25 | Alcohol only |
| 02/19/08 | D. Weiz | Maddens on Gull Lake | Unknown | Unknown | 673.59 | No receipt - "Room deposit" handwritten on statement |
| 07/21/08 | D. Weiz | Hyatt Hotels | Unknown | Unknown | 45.79 | No receipt |
| 08/24/08 | D. Weiz | Canon Inn of Thief River Falls | Unknown | Unknown | 66.44 | No receipt |
| 08/27/08 | D. Weiz | Canon Inn of Grand Forks | Unknown | Unknown | 82.50 | No receipt |
| 10/14/08 | D. Weiz | Carl's Lake Country | Unknown | Unknown | 11.03 | No receipt |
| 11/06/08 | D. Weiz | Sta-Mart | Unknown | Unknown | 24.30 | No receipt - probably gas |
| 11/20/08 | D. Weiz | McDonald's | Unknown | Unknown | 5.11 | No receipt |
| 11/29/08 | D. Weiz | Sta-Mart | Unknown | Unknown | 62.92 | Missing receipt |
| 08/25/09 | D. Weiz | Black Cat Sports Bar | Richard Anderson, David Nenssen (Members) | NY Food Products LLC Proposal | 44.65 | No itemized receipt, Instructed by DOL in May 2009 to provide itemized receipts |
| 08/26/09 | D. Weiz | Teamster's Lounge | 9 members listed | Union Storage Proposal Meeting | 71.25 | Alcohol only |
| 14/18/09 | D. Weiz | Applebee's | Jeff Beauchamp, Lance Volk (Stewards) | Cole Negotiations | 25.15 | Alcohol only |
| 11/23/09 | D. Weiz | Teamster's Lounge | 18 members listed | Cole - Morehead Ratification | 175.79 | Appears to be alcohol only; Instructed by DOL in May 2009 to provide itemized receipts |
| 11/25/09 | D. Weiz | Teamster's Lounge | Dennis Foley, Scott Miller, Tobias Milligan | Concast Concrete North Dakota | 31.60 | Alcohol only |
| 12/01/09 | D. Weiz | Herb's Side Cafe | Dave Gulbranson, Steward | City of East Grand Forks Negotiations | 20.57 | No itemized receipt; Instructed by DOL in May 2009 to provide itemized receipts |
| 12/02/09 | D. Weiz | Teamster's Lounge | 16 members listed | Sysco Proposal Meeting | 116.25 | Alcohol only |
| 12/03/09 | D. Weiz | Teamster's Lounge | 4 members listed | Concast Concrete North Dakota | 37.25 | Alcohol only |
| 12/16/09 | D. Weiz | Tailgaters | Brent Rosendahl, Johnnie Frazier | Sysco Negotiations | 37.01 | No itemized receipt, Instructed by DOL in May 2009 to provide itemized receipts |
| 12/18/09 | D. Weiz | Copper Lantern | D. Cypher | Executive Board Meeting | 40.91 | No itemized receipt, Instructed by DOL in May 2009 to provide itemized receipts |
| 01/01/10 | D. Weiz | Subway | Self | Extreme Makeover HR Meeting | 10.95 | No itemized receipt |
| 01/04/10 | D. Weiz | Charlie's Cafe | Self | Viewing of Extreme Makeover | 17.63 | No itemized receipt |
| 01/06/10 | D. Weiz | Midway Cafe | Self | City of Warren negotiations | 12.46 | No itemized receipt |
| 01/15/10 | D. Weiz | Jimmy John's | Self | Grand Forks divisional meeting | 9.84 | No itemized receipt |
| 01/25/10 | D. Weiz | Gerard's Restaurant | 3 members (B. Rosendahl, J. Fischer, L. Buhl) | Meeting with Sysco drivers | 22.39 | 73% alcohol |
| 02/03/10 | D. Weiz | Flyer Pub | B. Rosendahl (Steward), J. Fischer (member) | Sysco negotiations | 53.86 | No itemized receipt |
| 02/10/10 | D. Weiz | Teamster's Lounge | B. Rosendahl (Steward), J. Fischer (member) | Sysco negotiations | 14.00 | Alcohol only |

8

D004797

# Teamsters Local 120
## Improper Credit Card Charges and/or Missing Receipts

| Date | Name | Vendor | Attendees | Purpose | Amount | Note |
|---|---|---|---|---|---|---|
| 02/06/10 | D. Walz | TNT's Diner | 2 members (J. Rosendahl, J. Fischer) | Sysco negotiations | 34.68 | No itemized receipt |
| 02/10/10 | D. Walz | Teamster's Lounge | B. Rosendahl (Steward), J. Fischer (member) | Sysco negotiations | 20.50 | Alcohol only |
| 02/17/10 | D. Walz | Teamster's Lounge | Slawson, Jr., 4 members | Sysco negotiations | 186.25 | 50% alcohol |
| 03/18/10 | D. Walz | Teamster's Lounge | 2 members (J. Rosendahl, J. Fischer) | Sysco negotiations | 10.00 | 78% alcohol |
| 03/26/10 | D. Walz | Teamster's Lounge | 18 members | Sysco contract vote | 345.75 | Alcohol only |
| 03/04/10 | D. Walz | Jimmy John's | Self | Bar Grand Forks/Water & Light Negotiations | 8.77 | No itemized receipt |
| 03/24/10 | D. Walz | Lantern d' 180 | 4 members (J. Lindgren, K. Erickson, J. Hunt, C. Peterson) | Farmers contract ratification vote | 26.66 | No itemized receipt |
| 04/03/10 | D. Walz | Teamster's Lounge | 9 Narveh and 4 members listed | Divisional Membership Meeting | 41.50 | Alcohol only |
| 04/24/10 | D. Walz | North Side Café | Dave Hildebrand, Steward | Simplot grievance meeting | 22.23 | No itemized receipt |
| 04/27/10 | D. Walz | North Side Café | 5 members listed | Dean Foods Proposal Meeting | 66.99 | No itemized receipt |
| 05/02/10 | D. Walz | Subway | Self | CHS meeting with carriers | 11.66 | No itemized receipt |
| 05/08/10 | D. Walz | Sully's Bar-Sully's Las Vegas | R. Vaddara, B. Jenkins, B. Rademacher, T. Erickson, P. Johnson, D. Schrunk, Slawson, Jr., G. Pizn, D. Baker | Unity Conference | 341.75 | On hotel bill (no itemized receipt) - appears Alcohol only because Sully's Bar does not serve food |
| 05/10/10 | D. Walz | Sully's Bar-Sully's Las Vegas | P. Walker, B. Jenkins, B. Rademacher, T. Erickson, P. Johnson, Slawson, Jr., G. Pizn, D. Baker | Unity Conference | 150.00 | On hotel bill (no itemized receipt) - appears Alcohol only because Sully's Bar does not serve food |
| 05/11/10 | D. Walz | Billy Gambling Hall & Saloon | P. Walker, B. Jenkins, B. Rademacher | Unity Conference | 89.50 | Alcohol only |
| 09/17/10 | D. Walz | Melody Café | J. Liaskowski (member) (grievance) | Meeting with City Council regarding (arbitration) | 15.60 | No itemized receipt |
| 09/02/10 | D. Walz | Teamster's Lounge | Rose Roland, Lester Rougas, Jason Campbell, Aeth Sackman, Boraklen, Frank T, Kent McDonald | Bar Employee Meeting | 35.00 | Alcohol only |
| 06/24/10 | D. Walz | Teamster's Lounge | Iris Guen, Denise Little, Robey Sorgent, Leann Peshunk | Meeting with bar employees | 18.00 | Alcohol only |
| 04/07/10 | D. Walz | Teamster's Lounge | K. Rademacher (D. Walz' wife & bar employees) | Meeting with bar employees | 60.00 | Alcohol only |
| 04/14/10 | D. Walz | Teamster's Lounge | K. Rademacher, Lori Ackerson (D. Walz' wife & bar employees) | Food Processing Palsy Meetings | 18.55 | No itemized receipt |
| 08/29/10 | D. Walz | Front Pan | Mell Harmease and Kevin Turres (Members) | Branick Ind. Negotiations | 21.53 | No itemized receipts |
| 08/30/10 | D. Walz | Teamster's Lounge | Tadd Chester, Consultant | Consultation of Bar Operations | 38.25 | Alcohol only |
| 07/15/10 | D. Walz | Teamster's Lounge | L. Cepa (Steward) | Dean Foods Moorhead & GF negotiations | 31.75 | Alcohol only |
| 07/16/10 | D. Walz | Front Pan | L. Cepa (Steward) | Dean Foods Moorhead & GF negotiations | 23.13 | No itemized receipts |
| 07/22/10 | D. Walz | Star-Mart | Unknown | Unknown | 70.81 | No receipt |
| 07/22/10 | D. Walz | Star-Mart | Unknown | Unknown | 48.04 | No receipt |
| 08/02/10 | D. Walz | White Horse Tavern | D. Baker | Dairy Conference (II) | 263.39 | Over $100.00 per person (excessive), no itemized receipt |
| 08/10/10 | D. Walz | Teamster's Lounge | 7 members listed | Dean Foods Proposal Meeting | 79.00 | Alcohol only |
| 08/11/10 | D. Walz | North Side Café | David Nelson, William Hartow (Members) | Dean Foods Proposal Meeting | 23.78 | No itemized receipt |
| 08/31/10 | D. Walz | Teamster's Lounge | Don Phillips, Attorney | Meeting with attorney | 24.50 | Alcohol only |
| 09/03/10 | D. Walz | Black Cat Sports Bar | 3 members listed | Proposal Meeting Falls DAC | 92.84 | No itemized receipt |
| 09/10/10 | D. Walz | Ole Piper Inn | Brad Sr., Brad Jr., Pat Lynch 18", Gary Cooney, Leon 229 | Meeting on Local 120 Labor Rally | 240.05 | 83% of bill alcohol |

Case 2:14-cv-01027-LRR   Document 23-3   Filed 01/08/16   Page 29 of 65

D004798

# Teamsters Local 120

## Improper Credit Card Charges and/or Missing Receipts

| Date | Name | Location | Members/People | Purpose | Amount | Note |
|---|---|---|---|---|---|---|
| 06/12/10 | D. Walz | North Side Cafe | 11 members Wasog | Meeting with Simplot/Steward | 52.35 | No itemized receipt |
| 09/30/15 | D. Walz | Teamster's Lounge | Leann Krebbach, Amber Tuggs, Denise Little | Meeting with Fargo employees | 83.45 | No itemized receipt, Unknown, staff only |
| 10/07/15 | D. Walz | North Side Cafe | B. Novak | Vote - City of East Grand Forks | 21.48 | No itemized receipt |
| 10/12/10 | D. Walz | Teamster's Lounge | B. Novak, Quentin Hausauer and Al Thomas (638), Dan Phillips, Attorney | Meeting regarding CHS NLRB ruling | 66.75 | Alcohol only |
| 10/14/10 | D. Walz | Teamster's Lounge | Doug Owen, Kevin Tormes, Brent Koppelsloen, Jeff Edmonds | Fargo Divisional Meeting | 20.25 | Alcohol only |
| 10/22/10 | D. Walz | Teamster's Lounge | Jared Sr., Brad Jr., M. Kloczewski, B. Rademacher, Brenda Eriktson, Leann Krebbach, Amber Tuggs | Fargo Board Meeting | 53.50 | No itemized receipt |
| 11/22/10 | C. Walz | Teamster's Lounge | B. Novak | 120 Executive Board and membership meetings | 22.82 | No itemized receipt |
| 11/24/10 | C. Walz | Clearwater Travel Plaza | B. Novak, 3 Stewards (M. Carpenter, J. David, L. Trotter) | East Grand Forks Water & Light negotiations | 88.00 | No itemized receipt |
| 11/09/10 | D. Walz | Blue Moose Bar & Grill | B. Novak, 2 members (M. Holmquist, P. Strickler), 2 people from 638 (Q. Hausauer, T. Volk) | CHS negotiations | 116.00 | No itemized receipt |
| 11/09/10 | D. Walz | Ramada Inn | B. Novak, 2 members (M. Holmquist, P. Strickler), 2 people from 638 (Q. Hausauer, T. Volk) | CHS negotiations | 53.73 | No itemized receipt |
| 11/10/10 | D. Walz | Ramada Inn | B. Novak, 2 members (M. Holmquist, P. Strickler), 2 people from 638 (Q. Hausauer, T. Volk) | CHS negotiations | 54.94 | No itemized receipt |
| 11/11/10 | D. Walz | North Side Cafe | B. Novak, R. Brown (retired), 3 members (J. Simmerson, W. Berger, D. Overland) | CHS negotiations | 45.25 | No itemized receipt |
| 11/11/10 | D. Walz | Teamster's Lounge | Steve Lappegaard (Steward), Roger Jablinske (Member) | Fargo dividional meeting | 31.14 | No itemized receipt |
| 12/07/10 | D. Walz | Black Cat Sports Bar | B. Novak, Dan Phillips, Attorney | Meeting on termination | 79.00 | No itemized receipt |
| 12/16/10 | D. Walz | Teamster's Lounge | B. Novak, Dan Phillips, Attorney | Food Services of America | 499.95 | Missing receipt |
| 12/17/10 | D. Walz | Taco Johns | Unknown | Unknown | 7.00 | Missing receipt |
| 01/11/11 | D. Walz | Bronze Boot | Dan Phillips Attorney, Mike Holmond (Steward), Roger Jenson 638 Attorney, Al Thomas 638 BA, Quinten Hausaur 638 BA | CHS Ballot Protest Meeting | 90.45 | Alcohol only |
| 02/02/11 | D. Walz | Dave's Southside Tap | Dan Phillips Attorney | Work Order Termination | 24.75 | Bill at bills is alcohol |
| 02/02/11 | D. Walz | Teamsters Lounge | Dan Phillips Attorney | Work Order Termination | 31.00 | No itemized receipt |
| 02/19/11 | D. Walz | Ole Piper Inn | Brian Novak | Local 120 membership meeting in Blaine | 128.25 | No itemized receipt |
| 02/20/11 | D. Walz | Copper Lantern | Self | Local 120 membership meeting on Blaine | 14.21 | No itemized receipt |
| 02/23/11 | D. Walz | Ole Piper Inn | Brian Novak, Brian Jenkins, Larry Nartker, Member | Rally in Wausatian, Madison, WI | 95.00 | No itemized receipt |
| 02/17/11 | D. Walz | Teamster's Lounge | Brian Novak and Volk, Berger, Overton (Stewards) | Fargo Divisional Meetings | 45.25 | Alcohol only |
| 03/23/11 | D. Walz | Ole Piper Inn | B. Novak, B. Jenkins, M. Kloczewski, Brad Jr., T. Erickson, B. Rademacher | General Membership Meeting | 341.20 | No itemized receipt, staff only, in town for Blaine, MN employees |
| 04/26/11 | D. Walz | Teamsters Lounge | No members listed on receipt | Branick Proposal Meeting | 72.00 | No itemized receipt |
| 04/28/11 | D. Walz | Big Sioux Cafe | 6 Stewards listed | Simplot negotiations | 114.34 | No itemized receipt |
| 04/29/11 | D. Walz | Red Lobster | B. Novak, Leann Krebbach, Amber Tuggs | Secretary's Day - Lunch for office staff | 83.62 | In town meal with 4 employees |
| 05/03/11 | D. Walz | Kesling Concepts | Unknown | Unknown | 70.00 | No receipt |
| 05/17/11 | D. Walz | East Side Place Plaza | Unknown | Unknown | 109.90 | No receipt |

P-App. 28

D004799

Case 2:14-cv-01027-LRR   Document 23-3   Filed 01/08/16   Page 30 of 65

# Teamsters Local 120
## Improper Credit Card Charges and/or Missing Receipts

| Date | | Location | Attendees | Purpose | Amount | Issue |
|---|---|---|---|---|---|---|
| 05/25/11 | D. Walz | Carl's Lake Country Bar | Unknown | Unknown | 79.48 | No receipt |
| 06/30/11 | D. Walz | Texas Roadhouse | Brian Nowak | Simpkit negotiations | 95.10 | 54% of bill is alcohol |
| 06/27/11 | D. Walz | Teamster's Lounge | 7 members | Simpkit Contract Ratification | 136.75 | No itemize receipt |
| 06/30/11 | D. Walz | Teamster's Lounge | 7 members | Simpkit Contract Vote | 109.50 | No itemize receipt |
| 06/30/11 | D. Walz | AJ's Grill & Catering | Brian Nowak and 6 Stewards | Simpkit Contract Vote | 105.57 | No itemize receipt |
| 07/06/11 | D. Walz | Black Cat Sports Bar | 6 members | Simpkit Contract Meeting | 21.50 | No itemize receipt |
| 07/27/11 | D. Walz | Teamster's Lounge | Dan Phillips, Attorney | Meeting with Attorney | 74.75 | No itemize receipt |
| 07/15/11 | D. Walz | Teamster's Lounge | Brian Nowak, Will Witz (Steward) | Meeting with NW beverage Steward | 29.75 | No itemized receipt |
| 08/29/11 | D. Walz | Teamster's Lounge | Dan Phillips, Attorney | meeting with Attorney | 21.00 | No itemize receipt |
| 09/05/11 | D. Walz | Teamster's Lounge | Brian Nowak, Dan Phillips (Attorney) | Meeting with Attorney | 79.00 | No itemize receipt |
| 09/07/11 | D. Walz | North Side Cafe | Brian Nowak | Sam Vote | 26.67 | No itemize receipt |
| 09/15/11 | D. Walz | Our Place Inn | B. Nowak, Brad Sr., Brad Jr., W. Kiselych, Fred Dieckmann IBT rep | Executive Board & Membership Meeting | 188.25 | No itemized receipt |
| 10/01/11 | D. Walz | Teamster's Lounge | Various members and retirees | Fargo Membership Picnic | 120.75 | No itemized receipt |
| 10/13/11 | D. Walz | Old Creamery | B. Nowak | General Membership Meeting | 20.31 | No itemized receipt |
| 11/02/11 | D. Walz | Black Cat Sports Bar | 6 members | General Membership Meeting | 24.26 | No itemized receipt |
| 11/10/11 | D. Walz | Teamster's Lounge | B. Nowak, 5 members | Fargo membership meeting | 47.25 | No itemize receipt |
| 11/14/11 | D. Walz | Teamster's Lounge | B. Nowak, 7 members | Fargo Glass & Paint Members | 58.00 | No itemized receipt |
| 11/15/11 | D. Walz | Black Cat Sports Bar | 5 members | Ralls DMC Proposal meeting | 21.00 | No itemized receipt |
| 11/22/11 | D. Walz | Fryn Pan | B. Nowak, Al Thomas/Jeff Derke Local 638 | Fargo Glass & Paint Negotiations | 9.77 | No itemized receipt |
| 11/28/11 | D. Walz | Grizzly Grill N Saloon | Brad Sr. | JR Simplot visit | 96.50 | No itemized receipt |
| 12/04/11 | D. Walz | Teamster's Lounge | B. Nowak, 2 Caterpillar employees (J. Jacobs, A. Clements) | Caterpillar organizing meeting | 26.25 | No itemized receipt |
| 12/06/11 | D. Walz | Teamster's Lounge | Unknown | Food for members at membership meeting in Fargo | 101.10 | No itemized receipt - no names indicated |
| 12/13/11 | D. Walz | Teamster's Lounge | B. Nowak, 2 Caterpillar employees (J. Jacobs, A. Clements) | Caterpillar organizing meeting | 57.25 | No itemized receipt |
| 12/16/11 | D. Walz | Charles Cafe | B. Nowak | Organizing meeting with Caterpillar at IBT Christmas party and meeting | 24.45 | No itemized receipt |
| 12/22/11 | D. Walz | Teamster's Lounge | B. Nowak, 2 Caterpillar employees (J. Jacobs, A. Clements), 1 Fargo Glass & Paint employee (D. Ferderer) | Organizing meeting with Glass & Paint | 85.35 | No itemized receipt |
| 01/13/12 | D. Walz | Fraternal Order of Eagles | B. Nowak, 4 members (D. Solbird, M. Casselius, J. David, M. Halverson) | Meeting with East Grand Forks WRJ. members | 176.50 | No itemized receipt |
| 01/16/12 | D. Walz | Kentucky Fried Chicken | B. Nowak | Shop Visits - Simplot EGF - Grand Forks Divisional | 25.34 | No itemized receipt |
| 01/17/12 | D. Walz | Great Wall Buffett | Self | Shop Visits - Simplot EGF - Grand Forks Divisional | 8.45 | No itemized receipt |
| 01/19/12 | D. Walz | Teamster's Lounge | B. Nowak plus 20 people on sign-in sheet | Fargo Glass & Paint proposal meeting | 103.75 | No itemized receipt |
| 01/25/12 | D. Walz | Black Cat Sports Bar | M. Stabolt (Scant Foods member) | Work comp claim meeting | 38.73 | No itemized receipt |
| 01/26/12 | D. Walz | Green Mill Willmar | M. Alverick | Shop Visits at AMPI & TRC | 23.28 | No itemized receipt |
| 01/26/12 | D. Walz | Dunn's Good Time Saloon | Self | Shop Visits at AMPI & TRC | 12.57 | No itemized receipt |
| 01/27/12 | D. Walz | VFW Club 5247 | M. Aberick plus 18 people on sign-in sheet | AMPI area meeting | 456.38 | No itemized receipt |
| 02/07/12 | D. Walz | Fryn Pan | B. Nowak | Meeting with terminated Simplot member | 37.51 | No itemized receipt - in-town, staff only |
| 02/13/12 | D. Walz | Teamster's Lounge | B. Nowak, other members (unsure who or how many) | Fargo divisional meeting | 58.00 | No itemized receipt |

11

D004800

# Teamsters Local 120

## Improper Credit Card Charges and/or Missing Receipts

| Date | Name | Location | Attendees | Purpose | Amount | Notes |
|---|---|---|---|---|---|---|
| 02/14/12 | B. Walz | Melody Café | J. Walters (Steward) | Meet with City of Warren Steward before visit | 11.61 | No itemized receipt |
| 02/21/12 | D. Walz | Teamster's Lounge | B. Nowak, Q. Ikonanz (S38 Stw), L. Desrosiers (S38 Steward) | Fargo Glass & Paint negotiations | 50.25 | No itemized receipt |
| 03/05/12 | D. Walz | Pizza Ranch Manteninose | Self | VRC/AWP shop visits and meetings | 9.41 | No itemized receipt |
| 03/07/12 | D. Walz | Titos Restaurant | 26 people on sign-in sheet | VRC/AWP shop visits and meetings | 10.23 | No itemized receipt |
| 03/08/12 | D. Walz | Teamster's Lounge | | Fargo divisional meeting | 131.75 | No itemized receipt |
| 03/10/12 | D. Walz | Teamster's Lounge | B. Nowak, 4 members (O. Gau, ..., D. Bustred) | Fargo Glass & Paint insurance meeting with Central States | 61.23 | No itemized receipt |
| 03/15/12 | D. Walz | Papa Place | Self | AWP grievance meeting | 10.82 | No itemized receipt |
| 03/16/12 | D. Walz | Old Creamery Creative | Self | Membership meeting | 21.75 | No itemized receipt |
| 03/21/12 | D. Walz | Teamster's Lounge | B. Nowak, 3 Stewards (J. Emmerton, D. Doczer, M. Hazel) | Cass Clay/Kemos negotiations | 48.50 | No itemized receipt |
| 03/22/12 | D. Walz | Fryn' Pan | B. Nowak, 3 Stewards (J. Emmerton, D. Doczer, M. Hazel) | Cass Clay/Kemos negotiations | 68.39 | No itemized receipt |
| 03/27/12 | D. Walz | Tanguous Sports Bar | B. Nowak, 3 Stewards (J. Emmerton, D. Doczer, M. Hazel) | Kemtorsp contract vote meeting | 60.74 | No itemized receipt |
| 03/29/12 | D. Walz | Black Cat Sports Bar | 10 members | Kemtorsp contract vote meeting | 63.22 | No itemized receipt |
| 04/03/12 | D. Walz | Teamster's Lounge | B. Nowak, 36 comes on sign-in sheet | Fargo Glass & Paint contract vote | 514.00 | No itemized receipt |
| 04/13/12 | D. Walz | North Side Café | Ravitzemann (Steward), R. Foakle (grievant) | Simplac pre-grievance meeting | 32.12 | No itemized receipt |
| 04/17/12 | D. Walz | Texas Roadhouse | B. Nowak | Dividence membership meetings | 55.33 | No itemized receipt |
| 04/20/12 | D. Walz | Clearwater Travel Plaza | B. Nowak | Executive Board and membership meetings | 28.14 | No itemized receipt |
| 04/21/12 | D. Walz | Norton | Unknown | Unknown | 85.66 | No receipt - appears to be annual anti-virus subscription reserve |
| 04/24/12 | D. Walz | Trailways Restaurant | Self | Visit shops in Dawson/Granite Falls, MN | 13.92 | No itemized receipt |
| 04/24/12 | D. Walz | Country Corner Café & Mini Mart | Self | Visit shops in Dawson/Granite Falls, MN | 11.54 | No itemized receipt |
| 04/30/12 | D. Walz | Teamster's Lounge | B. Nowak, Skowran, Jr., 3 Stewards (J. Emerich, D. Doctor, M. Hazel) | Cass Clay/Kemas negotiations | 255.50 | No itemized receipt |
| 05/02/12 | D. Walz | Barrett Inn & Cafe | Self | Dawson area meetings | 8.59 | No itemized receipt |
| 05/02/12 | D. Walz | VFW Club 5547 | 5 members (K. Buffington, S. Harrington, S. Palmer, B. Seivert, D. Ulrich) | Dawson area meetings | 100.45 | No itemized receipt |
| 05/09/12 | D. Walz | Teamster's Lounge | 13 people on sign-in sheet | Fargo divisional meeting | 55.75 | No itemized receipt |
| 05/10/12 | D. Walz | Copper Lantern | B. Nowak | Membership meeting | 24.05 | No itemized receipt |
| 05/24/12 | D. Walz | Melody Café | D. Phillips (attorney), J. Lisakowski (member) | Pre-arbitration meeting | 25.99 | No itemized receipt |
| 05/24/12 | D. Walz | Jak Stop | Unknown | Unknown | 7.51 | No receipt |
| 06/07/12 | D. Walz | Richard's House | Unknown | Unknown | 83.76 | No receipt - probably gas |
| 06/19/12 | D. Walz | Drew's Kitchen | S. Lapzegard (Dean Foods Steward) | Update with Dean Foods Steward | 24.99 | No itemized receipt |
| 06/26/12 | D. Walz | Teamster's Lounge | B. Rosendahl (Sysco Steward) | Meeting with Sysco Steward | 15.30 | No itemized receipt |
| 06/28/12 | D. Walz | Green Mill-Willmar | B. Nowak | Rusy Garcia arbitration (AWP) | 66.46 | No itemized receipt |
| 06/29/12 | D. Walz | Green Mill-Willmar | B. Nowak | Rusy Garcia arbitration (AWP) | 32.27 | No itemized receipt |
| 07/17/12 | D. Walz | Fryn' Pan | G. Glanche (Steward) | Meeting with Stanoel Steward | 24.08 | No itemized receipt |
| 07/24/12 | D. Walz | Melody Café | Self | Step 3 meeting with City Council | 12.10 | No itemized receipt |
| 07/25/12 | D. Walz | Watson Corner Store | Self | AWP negotiation meeting (Benson/Buffington) | 8.74 | No itemized receipt |

P-App. 30

D004601

Case 2:14-cv-01027-LRR   Document 23-3   Filed 01/08/16   Page 32 of 65

# Teamsters Local 120
## Improper Credit Card Charges and/or Missing Receipts

| Date | Name | Location | Attendees | Purpose | Amount | Notes |
|---|---|---|---|---|---|---|
| 07/30/12 | D. Walz | Teamsters Lounge | B. Nowak, B. Jensen (Forge BEP Steward) | Meeting with Steward (Gary Issues) | 23.00 | No itemized receipt |
| 08/02/12 | D. Walz | Subway | | Contract changes meeting with Sr. and Jr. | 20.17 | No itemized receipt |
| 08/06/12 | D. Walz | North Side Café | J. Atkinson (Simplex member) | Meeting with Simplex member | 8.05 | No itemized meeting |
| 08/15/12 | D. Walz | East Side VFW Post 4847 | B. Nowak | Freight grievances | 41.75 | Alcohol only |
| 08/20/12 | D. Walz | Countryside Restaurant | B. Nowak | Executive Board meeting | 53.54 | No itemized receipt |
| 09/07/12 | D. Walz | Wild Bill's Sports Saloon | J. Battaglia, D. Schenk | Labor picnic | 58.63 | No itemized receipt; In-town, staff only for J. Battaglia, D. Schenk |
| 09/29/12 | D. Walz | Teamsters Lounge | 4 members (R. Naitl, G. Cast, C. Gust, D. Ree) | Fundraiser (for John Miller (FEGP member) | 36.25 | |
| 09/11/12 | D. Walz | Black Cat Sports Bar | 3 stewards (J. Dahl, S. Lappegard) | Meeting with Deans Foods Stewards | 57.82 | No itemized receipt |
| 09/17/12 | D. Walz | VFW Club 3247 | 39 people on sign-in sheet | Forge membership meeting | 136.00 | No itemized receipt |
| 09/21/12 | D. Walz | Teamsters Lounge | | Forge membership picnic | 121.00 | No itemized receipt |
| 09/18/12 | D. Walz | North Side Café | B. Nowak, 17 people on sign-in sheet | | 164.39 | No itemized receipt |
| 09/18/12 | D. Walz | North Side Café | J. Hildebrand (Simplex Steward) | Grand Forks dividiana, meeting | 26.90 | No itemized receipt |
| 09/23/12 | D. Walz | Old Creamery Creative | Self | Membership meeting | 15.00 | No itemized receipt |
| 09/25/12 | D. Walz | North Side Café | Self | Shop visits and proposal meetings | 15.57 | No itemized receipt |
| 09/24/12 | D. Walz | Neva's | Self | Shop visits and proposal meetings | 10.04 | No itemized receipt |
| 09/27/12 | D. Walz | Duffy's Good Time Saloon | Self | Shop visits and meetings at AAPI/YRC | 28.68 | No itemized receipt |
| 09/28/12 | D. Walz | Trailways Restaurant | Self | Shop visits and meetings at AAPI YRC | 10.76 | No itemized receipt |
| 10/04/12 | D. Walz | VFW Club 3247 | 8 people on sign-in sheet | AAPI dividional meeting | 144.48 | No itemized meeting |
| 10/10/12 | D. Walz | North Side Café | B. Nowak, P. Slattery, R. Walker, 2 Non Mbers (S. Nelson, A. Acxxxphn) | Organizing at Simplex | 94.48 | No itemized receipt |
| 10/12/12 | D. Walz | Teamsters Lounge | B. Nowak, 34 people on sign-in sheet | Fargo dividional meeting | 166.75 | No itemized receipt |
| 10/23/12 | D. Walz | Teamsters Lounge | 11 people on sign-in sheet | Crxton North proposal meeting | 220.00 | 78% alcohol |
| 10/25/12 | D. Walz | China King of TRF | S. Lappegard (Dean Foods Steward) | Meeting with Steward on plant issues | 20.52 | No itemized receipt |
| 11/06/12 | D. Walz | VFW Club 3247 | 58 people on sign-in sheet | Meeting with AAPI members regarding plant closing | 981.45 | No itemized receipt |
| 11/05/12 | D. Walz | Ruby Duck | Self | Meeting with AAPI members regarding plant closing | 14.74 | No itemized receipt |
| 11/09/12 | D. Walz | Trailways Restaurant | Self | Meeting with AAPI members regarding plant closing | 17.31 | No itemized receipt |
| 11/28/12 | D. Walz | Teamsters Lounge | B. Nowak, 33 people on sign-in sheet | Fargo dividional meeting | | Alcohol only |
| 12/26/10 | Slawson, Jr. | Brick Alley Pub | Self | IBT Dairy Conference | 90.00 | 51% alcohol |
| 01/10/07 | Slawson, Jr. | Donovan's Brooklyn Center | Brad Sr., Lyle Slawson, (2) | Building Meeting | 31.29 | In-town, staff only |
| 01/04/07 | Slawson, Jr. | Boling Square | K. Holida | Staff Meeting | 19.01 | In-town, staff only |
| 01/05/07 | Slawson, Jr. | Citano | M. Koochyk | (2) Bylaws | 52.00 | In-Town meal for Blaine staff only |
| 01/11/07 | Slawson, Jr. | Matina Sports Café | E. Maxey, J. Platz, R. Nelson, E. Dahlgren, D. Olson | North Dividial meetings | 100.23 | In-town, staff only |
| 01/20/07 | Slawson, Jr. | Jax Café | S. Puts, D. Schenk | Labor Building Trade Dinner | 58.78 | In-town, staff only |
| 01/29/07 | Slawson, Jr. | Selby's Saloon & Eatery | J. Jewett | Staff meeting | 23.62 | In-town, staff only |
| 01/31/07 | Slawson, Jr. | Leaning Tower of Pizza | Brad Sr., B. Rademacher, R. Ledson (?) | Last day of work, V. Maxey & P. (?) | 462.77 | In-town, staff only |
| 02/12/07 | Slawson, Jr. | Leaning Tower of Pizza | Self | Organizing meeting | 199.75 | In-town, staff only |
| 02/14/07 | Slawson, Jr. | Northwest Airlines | | Columbus MFC Meeting | 15.00 | Upgrade, no receipt |

13

**Subject:** Fwd: Local 120 LOB Claim
**Date:** Friday, March 20, 2015 at 9:46:15 AM Central Daylight Time
**From:** William Moore
**To:** Tom Erickson

Just FYI, do nothing......

**From:** Ed Sullivan [mailto:esullivan@LABORBENEFTSLLC.COM]
**Sent:** Friday, March 20, 2015 10:30 AM
**To:** Bell Richard C.
**Subject:** Local 120 LOB Claim

Teamsters Local Union 120
Claim No.:   638 0061918   Bradley D. Slawson, Sr.
Claim No.:   638 0065805   Bradley A. Slawson, Jr.
Claim No.:   638 0066863   Todd A. Chester
Claim No.:   6380067985    David J. Baker
Claim No.:   638 0067986   Donald M. Walz
Bond No.:
Payment of Claim

Hi Dick,

I am pleased to advise that the bonding company Claims Counsel, Ms. Jean Prem, Esq., has concluded the investigation of the captioned claims and has approved the payment of the claim in the amount of $232,062.36

Enclosed in duplicate are the "Release and Assignment" forms which need to be properly dated, signed, notarized and returned to my attention as soon as possible.

As always thanks for your help and please call with questions.

Edward F. Sullivan
Labor Benefits, LLC
10104 Senate Drive
Suite 233
Lanham, MD 20706
p: 301.459.6910
f: 202.747.7700
c: 202.841.8303
e: esullivan@laborbenefitsllc.com



## RELEASE AND ASSIGNMENT

Received from the Fidelity and Deposit Company of Maryland the sum of $232,062.36, being payment in full of the liability of said company for claims filed under its Bond No. _____ as set out in various Proofs of Loss dated July 29, 2014.

In consideration of said payment, the Fidelity and Deposit Company of Maryland is hereby released and discharged from said claims and International Brotherhood of Teamsters and Local Union No. 120, do hereby sell, assign, transfer and set over unto the Fidelity and Deposit Company of Maryland the said account in the amount of $232,062.36 against Todd A. Chester, Bradley D. Slawson, Sr., Bradley A. Slawson, Jr., David J. Baker, and Donald M. Walz.

Signed, sealed and dated this _____ day of _____, 20___.

International Brotherhood of Teamsters
and Teamsters Local Union No. 120

_____
Name

_____
Title

D004489

 **Labor Benefits**

March 20, 2015

Mr. Richard C. Bell
Executive Assistant to the General Secretary-Treasurer
International Brotherhood of Teamsters
25 Louisiana Avenue, N.W.
Washington, D.C. 20001

RE:  Teamsters Local Union 120
Claim No.:   638 0061918  Bradley D. Slawson, Sr.
Claim No.:   638 0065805  Bradley A. Slawson, Jr.
Claim No.:   638 0066863  Todd A. Chester
Claim No.:   6380067985  David J. Baker
Claim No.:   638 0067986  Donald M. Walz
Bond No.:
Payment of Claim

Dear Dick:

I am pleased to advise that the bonding company Claims Counsel, Ms. Jean Prem, Esq.,
has concluded the investigation of the captioned claims and has **approved the payment of
the claim in the amount of $232,062.36**

Enclosed in duplicate are the "Release and Assignment" forms which need to be properly
dated, signed, notarized and returned to my attention as soon as possible.

Upon receipt of both originals of the executed release forms, I will forward the claim check
to you for delivery to Local Union 120.

If after receipt and review, you have any questions, please call, otherwise we will await
your response to the inquiries raised and for the signed release form at your early
convenience.

Sincerely,

Edward F. Sullivan

Enclosures

## RELEASE AND ASSIGNMENT

Received from the Fidelity and Deposit Company of Maryland the sum of $232,062.36, being payment in full of the liability of said company for claims filed under its Bond No _____ as set out in various Proofs of Loss dated July 29, 2014.

In consideration of said payment, the Fidelity and Deposit Company of Maryland is hereby released and discharged from said claims and International Brotherhood of Teamsters and Local Union No. 120, do hereby sell, assign, transfer and set over unto the Fidelity and Deposit Company of Maryland the said account in the amount of $232,062.36 against Todd A. Chester, Bradley D. Slawson, Sr., Bradley A. Slawson, Jr., David J. Baker, and Donald M. Walz.

Signed, sealed and dated this _____ day of _____, 20___.

International Brotherhood of Teamsters
and Teamsters Local Union No. 120

_____
Name

_____
Title

D004491

**Page 1**

```
1          IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF IOWA
2                    EASTERN DIVISION

3    _____

     DAVID J. BAKER,
4
              Plaintiff,     Case No. 14-1027
5
     v.
6
     TEAMSTERS LOCAL UNION
7    NO. 120,
8              Defendant.
9    _____
10
11
12
               TELEPHONIC DEPOSITION OF
13
                  KRIS RADEMACHER
14
                 BLAINE, MINNESOTA
15
                 DECEMBER 10, 2015
16
17
18
19
20
21
22
23
24
25
```

**Page 2**

```
1
                    APPEARANCES
2

3
4    SIMMONS PERRINE MOYER BERGMAN, PLC
     115 Third Street SE
5    Suite 1200
     Cedar Rapids, IA 52401
6    BY:   Kevin J. Visser, appeared telephonically
           Attorney for Plaintiff
7    Telephone:  319.366.7641
     E-mail:  kvisser@simmonsperrine.com
8
9    TEAMSTERS LOCAL UNION NO. 120
     9422 Ulysses Street NE
10   Blaine, MN 55434
     BY:   Katrina E. Joseph
11         Attorney for Defendant
     Telephone:  763.267.6120
12   E-mail:  kjoseph@teamsterslocal120.org
13
14
15   ALSO TELEPHONICALLY PRESENT:  David Baker
16
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
1                 I N D E X
2
     WITNESS:  Kris Rademacher
3
     EXAMINATION                          PAGE
4
        By Mr. Visser                       4
5
     EXHIBITS
6              PLAINTIFF'S
     NUMBER        DESCRIPTION           PAGE
7
                   (NONE)
8
9    EXHIBITS
              DEFENDANT'S
10   NUMBER        DESCRIPTION           PAGE
11   1    E-mail from K. Rademacher       34
     2    E-mail from K. Stallsmith       44
12   3    E-mail from K. Rademacher       52
     4    E-mail from K. Rademacher       52
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 4**

```
1  THE TELEPHONIC DEPOSITION OF KRIS RADEMACHER, is
2  taken on the 10th day of December, 2015, at 9422
3  Ulysses Street NE, Blaine, Minnesota commencing
4  at the hour of 10:15 a.m. pursuant to Notice of
5  Taking Deposition.
6
7       * * * * * *
8
9       KRIS RADEMACHER,
10   called as a witness, being first duly
11   sworn, was examined and testified as
12   follows:
13
14       EXAMINATION
15
16  BY MR. VISSER:
17  Q   Please state your name and spell your last
18      name, if you will, ma'am.
19  A   Kris Rademacher, R-A-D-E-M-A-C-H-E-R.
20  Q   And where do you live, Ms. Rademacher?
21  A   I live in Mosinee, Wisconsin.
22  Q   Okay.  And how far is that from where you
23      are today in Blaine?
24  A   208 miles.
25  Q   Very good.
```

Page 45

1    had told -- Mr. Baker had told Kandi
2    Stallsmith that she was going to continue
3    maintaining his receipts. And
4    Ms. Stallsmith at that time reached out to
5    Mr. Moore and told him that Mr. Baker wasn't
6    following the rules as set to all agents of
7    maintaining their own credit card receipts.
8  Q   And had you heard prior to today's
9    termination of other any issues between he
10   and Mr. Moore?
11 A   Somebody had mentioned something about the
12   way Mr. Baker held a general membership
13   meeting down at the Dubuque office. But,
14   again, that was rumors I was hearing. It
15   was nothing that came -- that Mr. Moore or
16   Mr. Dwyer said directly to me.
17 Q   Anything else that you heard as to any other
18   issues that existed between Mr. Baker and
19   Mr. Moore prior to his termination?
20 A   If there were any other issues none of that
21   information was given to me or told to me.
22 Q   Teresa, I believe, has handed you or made
23   available to you there's what's been marked as
24   Deposition Exhibit Number 2. Do you have
25   that in front of you?

Page 46

1  A   Yes.
2  Q   And then I think it starts with an e-mail
3    that you sent on August 28, 2013 to Kandi
4    Stallsmith.
5  A   Yep.
6  Q   What was the purpose of the e-mail that you
7    originally sent?
8  A   Because Mr. Baker had filed for his pension
9    with the Teamsters affiliate pension. And
10   they needed a copy of his W-2 for the year
11   2008 that was issued by Local 421, which I
12   would not have had a copy of that here in
13   Blaine. That would have been maintained in
14   Dubuque because that would have been the W-2
15   issued by 421 prior to the merger. And I
16   also needed to know what type of work he did
17   while essential states wanted -- or the
18   affiliate, Teamsters affiliates, always want
19   to know what type of work a person has done
20   as an employee of the Teamsters union when
21   they file for their affiliates pension.
22 Q   Okay. Is that what the purpose of that
23   whole e-mail string during that afternoon?
24 A   Yep. I just needed to provide information
25   to the affiliate for the pension plan what

Page 47

1    work Mr. Baker did in the years that he
2    worked for Teamsters Local No. 421 and 120.
3  Q   Are you aware of any audit of Mr. Baker's
4    credit card expenses that occurred during
5    the time that you were employed by Local
6    120?
7  A   After trusteeship the International
8    Brotherhood of Teamsters came in, two of
9    their auditors came in, and audited pretty
10   much all the -- a majority of credit card
11   receipts for all card holders.
12 Q   Let me make sure that I understand the
13   timing. I think you said after the
14   trusteeship. Do you mean after the
15   trusteeship started or after it ended?
16 A   After it started. The trusteeship was in
17   November of 2012. And I believe two of the
18   IBT auditors came in May or June of 2013
19   and came in and went through pretty much
20   just all credit card receipts by all card
21   holders.
22 Q   What role did you play in that audit that
23   took place in May or June of 2013?
24 A   I just had to provide them with all the
25   statements and all the receipts. If they

Page 48

1    questioned me on something and I had an
2    answer for them, I would be able to answer
3    it for them. Otherwise, they would question
4    -- a lot of their questions went to
5    Mr. Moore or Mr. Dwyer.
6  Q   What, if anything, was the outcome of the
7    audit that was done by the two IBT auditors.
8  A   Well, some of the agents were asked to give
9    money back to the Local because of their
10   expenditures. But instead of paying the
11   Local directly it came out of their
12   vacation.
13 Q   So, for example, if an agent had $500 that
14   it was determined that agent owed back and
15   the agent was due $1,000 of vacation pay
16   then they would get $500 of vacation pay
17   rather than the $1,000?
18 A   Yeah, their vacation is by week. If it was
19   $500 that would maybe consist of that one
20   week's pay or close to one week's pay, then
21   that one week would be taken off of their
22   vacation.
23 Q   If I could put it different way. It was an
24   offset?
25 A   Correct.

Page 49

1  Q   Can you identify some of the agents that
2      were required to have offset because of the
3      IBT audit?
4
5          MS. JOSEPH:  Mr. Visser, I want to
6      be clear here.  She can be identify the
7      names of the individuals.  But the specific
8      agreement are subject to confidentiality.
9      And as I mentioned in our discovery
10     responses we will require an court order to
11     disclose the substance of those agreements.
12         MR. VISSER:  Okay.  Thank you.
13         Subject to that objection,
14     Ms. Rademacher, can you answer?
15         THE WITNESS:  To the best of my
16     knowledge it was Bryan Rademacher, Tom
17     Erickson, Brad Jenkins, Donnie Walz or maybe
18     not Donnie, maybe Donnie had left, Brian
19     Novak.  Maybe one of the agents out of
20     Fargo.
21
22 BY MR. VISSER:
23 Q   So it was some but not all the agents?
24 A   Correct.
25 Q   These records that were audited by IBT had

Page 50

1      previously been audited by Legacy, the CPAs,
2      correct?
3  A   Yes.
4  Q   And they had previously been reviewed by the
5      trustees of the Local 120?
6  A   Yes.
7  Q   And they previously been checked by you?
8  A   Yes.  And along with the IRB.
9  Q   What is it that as a general matter, if you
10     can generalize, the IBT auditors found that
11     everyone else missed?
12 A   Well, the IBT has a different set of
13     guidelines than maybe each individual local
14     union has as far as how they use their
15     credit cards.
16 Q   How are those guidelines different?
17 A   They go by you can't put meals on your
18     credit card if you're at least within a
19     certain area, within a certain mile span.
20     Alcohol was an issue.  Maybe out-of-town
21     meals was an issue.  Those were a couple of
22     things that I can remember.
23 Q   Okay.  Did you play any other role in the
24     May or June 2013 IBT audit of expenses?
25 A   Nope.  Other than just providing the

Page 51

1      documents that the auditors asked for.
2  Q   Okay.  Are you aware of any other outcome,
3      aside from what you've described, the
4      agents that you identified, that came from
5      this audit of expenses?
6  A   Other than the auditors just express their
7      concerns or issues with Mr. Dwyer and
8      Mr. Moore and due to some of those issues
9      there were some policies and procedures put
10     in place with regard to the use of credit
11     cards.
12 Q   What policies and procedures changed or how
13     did they change after mid 2013?
14 A   Right after the trusteeship one thing that
15     did change was no alcohol was to be
16     purchased at all on anyone's credit card.
17     That was one thing that was changed.  All
18     agents were required to put their mileage on
19     their gas receipts because the Local paid
20     for their fuel.  No meals could be purchased
21     if the agents were in town.  They could not
22     -- and they took a stewart after meeting
23     they could not purchase meal for the
24     stewart.  The only time they could purchase
25     meals is if they were in negotiations.  And

Page 52

1      negotiations they could buy their
2      committee's lunch if the negotiations were
3      in the morning and lasted until evening.
4  Q   Okay.  Is your answer complete?
5  A   Yep.  To the best of my knowledge, yeah.
6
7          MR. VISSER:  Teresa, if you would
8      mark two additional exhibits, I would
9      appreciate it.  I think they're the next
10     two, I'm going to say, in order.  They're
11     two single page e-mails with the Bates
12     number in the lower right corner 4484 and
13     4492.
14
15         (WHEREUPON, Exhibits 3 and 4 were
16     marked for identification.)
17
18 BY MR. VISSER:
19 Q   Ms. Rademacher, what is deposition
20     Exhibit 3?
21 A   It was an e-mail that I sent to Tom Erickson
22     to come in on a Saturday morning to pull the
23     credit card statements and receipts of
24     Mr. Baker's since the merger in 2008 as
25     requested by Ms. Joseph.

Page 57

1    February 12th of 2015 for an improper use of
2    credit card on the part of Mr. Baker. What
3    role, if any, did you play in assembling the
4    materials that supported that claim?
5  A   All I would provide is the credit and
6    Mr. Baker's credit card statement and the
7    receipts that were attached to it.
8  Q   You were not responsible for putting
9    together any kind of an Excel or other
10   spread sheet that was entitled Teamsters 120
11   Improper Credit Card Charges and/or Missing
12   Receipts?
13  A   That was I think created by the auditors of
14   the IBT.
15  Q   Do you know why this claim pertaining to
16   Mr. Baker was not filed until February of
17   2015?
18  A   That I do not know.
19  Q   Did anybody tell you that that claim was
20   being filed in February of 2015?
21  A   Not that I recall.
22  Q   How did you become aware that the claim was
23   filed?
24  A   I filled out some paperwork -- well, yeah, I
25   filled out some paperwork.

Page 58

1  Q   What paperwork?
2  A   The claim.
3  Q   I hear another voice. Has someone being
4    saying something to you there,
5    Ms. Rademacher?
6  A   No. Eh-eh.
7  Q   I guess I'm particular. I'm wondering if
8    you filled out the -- are you left-handed by
9    any chance?
10  A   No. I'm right-handed.
11  Q   Does your handwriting slant backward towards
12   the left.
13  A   You know, it could. But without being able
14   to see what you're talking about, I can't
15   help you.
16  Q   I'm not sure that we set this document up or
17   we didn't use it. But for counsel's purpose
18   it's the document Proof of Loss Claim, page
19   4789.
20
21       MS. JOSEPH: Is that the February
22   of 2015 bond claim which --
23       MR. VISSER: Yes, it is.
24       MS. JOSEPH: I can tell you that is
25   Ms. Rademacher's handwriting.

Page 59

1       MR. VISSER: It is?
2       MS. JOSEPH: Yes.
3       MR. VISSER: Great.
4
5  BY MR. VISSER:
6  Q   Ms. Rademacher, in addition to filling out
7    the handwriting on the front of that form,
8    did you have anything else to do with its
9    preparation?
10  A   No. Other than what Mr. Moore wanted me to
11   write on that form.
12  Q   Okay. It also says -- and I understand you
13   may not have that in front of you. It says
14   see attachment spread sheets that I was just
15   referring to. You think they were prepared
16   by the IBT auditors?
17  A   Correct. Because they're the ones that came
18   in to determine what was considered misuse
19   of the credit cards.
20  Q   What were you -- what was the nature or the
21   reason for you interacting with Mr. Moore on
22   February 12, 2015?
23  A   He asked me it me to do something, to write
24   this information out for him. Because he
25   was my boss I complied as he asked.

Page 60

1  Q   I thought that he left on January 18, 2015.
2  A   Well, he was still -- I mean, because he was
3    the one that initially filed it, he was the
4    one that was continuing to do so. So, you
5    know, he is an employee of the IBT. He was
6    my boss up until the executive board was put
7    in place. But this was something he started
8    prior to the executive board coming on. So
9    it was something that he wanted to finish.
10  Q   When you say he started this prior to
11   executive board coming on, what did he do,
12   if anything, to start it?
13  A   He filed a claim with the bonding company.
14  Q   But nothing pertaining to Mr. Baker?
15  A   That I don't recall.
16  Q   You're not aware of any other claim with the
17   bonding company against Mr. Baker that was
18   filed prior to February 12, 2015, are you?
19  A   Not that I'm aware of, no.
20  Q   And did you actually see Mr. Moore on
21   February 12, 2015?
22  A   That I can't remember. That I can't answer
23   because I don't remember.
24  Q   Okay. And I'm trying to understand things
25   here. I thought that you had said a little

Page 1

```
1          IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF IOWA
2                   EASTERN DIVISION

3    _____

4    DAVID J. BAKER,

               Plaintiff,     Case No. 14-1027
5
     v.
6
     TEAMSTERS LOCAL UNION
7    NO. 120,
8               Defendant.

9    _____
10
11
12
             TELEPHONIC DEPOSITION OF
13
                   JOSEPH DWYER
14
               BLAINE, MINNESOTA
15
             DECEMBER 10, 2015
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1                  I N D E X
2
     WITNESS:  Joseph D yer
3
     EXAMINATION                         PAGE
4
         By Mr. Visser                    4
5
     EXHIBITS
6               PLAINTIFF'S
     NUMBER        DESCRIPTION          PAGE
7
                 (NONE)
8
9    EXHIBITS
               DEFENDANT'S
10   NUMBER        DESCRIPTION          PAGE
11   1    E-mail from D. Baker          30
     2    Letter Titled David Baker     36
12   3    E-mail Su ject: Bo  Schauer   36
     4    E-mail from K. Stallsmith     38
13   5    La or Hall of Fame Ceremony   42
     6    urich Proof of Loss Claim     43
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 2

```
1              APPEARANCES
2
3
4    SIMMONS PERRINE MOYER BERGMAN, PLC
     115 Third Street SE
5    Suite 1200
     Cedar Rapids, IA 52401
6    BY:   Kevin J. Visser, appeared telephonically
               Attorney for Plaintiff
7    Telephone:  319.366.7641
     E-mail:  kvisser@simmonsperrine.com
8
9    TEAMSTERS LOCAL UNION NO. 120
     9422 Ulysses Street NE
10   Blaine, MN 55434
     BY:   Katrina E. Joseph
11         Attorney for Defendant
     Telephone:  763.267.6120
12   E-mail:  kjoseph@teamsterslocal120.org
13
14
15   ALSO TELEPHONICALLY PRESENT:  David Baker
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
1   THE TELEPHONIC DEPOSITION OF JOSEPH DWYER, is
2   taken on the 10th day of December, 2015, at 9422
3   Ulysses Street NE, Blaine, Minnesota commencing
4   at the hour of 1:04 p.m. pursuant to Notice of
5   Taking Deposition.
6
7        * * * * * *
8
9        JOSEPH DWYER,
10   called as a witness, being first duly
11   sworn, was examined and testified as
12   follows:
13
14        EXAMINATION
15
16   BY MR. VISSER:
17   Q   Sir, will you please state your name.
18   A   Joe Dwyer, D-W-Y-E-R.
19   Q   Where did you live, Mr. Dwyer?
20   A   I'm a full time RV'er and currently I am in
21       the state of Arizona.
22   Q   Very good.
23            For how long have you been a
24       full-time RV'er?
25   A   Since April of this year.
```

ESQUIRE
S O L U T I O N S

800.211.DEPO (3376)
EsquireSolutions.com

Case 2:14-cv-01027-LRR   Document 23-3   Filed 01/08/16   Page 42 of 65

P-App. 40

Page 13

1    came out here that following Monday,
2    November 2012, what did you find once you
3    arrived here in the Midwest?
4  A   I arrived with numerous other folks that
5    were here to trustee the local union.  There
6    was an overview of what was going on and how
7    the trusteeship would be implemented the
8    night before we implemented it.
9  Q   And what were you told about how the
10    trusteeship was to be implemented on the
11    night before?
12  A   We just all had specific duties.  One of
13    mine was to go into the office staff and to
14    be with them during the takeover.  That was
15    my duties the first day.
16  Q   And as the trusteeship continued, unfolded
17    over the next -- was it two years that you
18    were up there in Minnesota then?
19  A   Yeah, it was a little over two years.
20  Q   Describe your role as it evolved there over
21    that entire period?
22  A   I was the assistant trustee that work under
23    Mr. Moore.  I was on the ground probably
24    more than Mr. Moore here.  I spent more time
25    and basically was a support person to help

Page 14

1    in any way that I possibly can.  I kind of
2    oversaw the day-to-day operations of the
3    local union.  And the other function that I
4    was assigned was the chairmanship of their
5    health and welfare trust and pension trust
6    and their 401K trust.
7  Q   Do you continue to hold some of those
8    responsibilities with respect to the benefit
9    plan trusts?
10  A   Yes, I do.  I still serve as chairman of all
11    three of those trusts.
12  Q   Why so?
13  A   Local 120 has asked me to do that.
14  Q   And so Local 120 I think is under no
15    continuing obligation to use your services
16    but rather they've chosen to have you
17    remain?
18  A   That's correct.
19  Q   Very good.
20       Prior to November 2012 were you
21    acquainted with David Baker?
22  A   No, I was not.
23  Q   When did you first meet him?
24  A   That first week we were here all the
25    business agents came to Blaine that first

Page 15

1    week to visit with Mr. Moore and the folks
2    that were here.  So it would have been one
3    day that week.  Which day, I don't
4    necessarily recall.
5  Q   And I had asked you a question a little bit
6    about what was happening the night before.
7    And you indicated various people were there.
8    I'm trying to understand how many folks were
9    associated with the trusteeship?  Was it
10    just you and Mr. Moore?
11  A   At the beginning?
12  Q   Yes.
13  A   No.  They were probably -- you know, I can't
14    -- but I would say numerous folks that were
15    assigned to come in and kick the trusteeship
16    off.  Maybe -- you know, I really can't tell
17    you.  I would say maybe a dozen folks.
18  Q   People with similar experience to yours as a
19    long time experienced principal officer?
20  A   I wouldn't know all of their history.  Some
21    were principal officers some were
22    international reps, some were business
23    agents at their local unions.
24  Q   And about how long was this larger group in
25    place to get the trusteeship kicked off?

Page 16

1  A   Less than two weeks.
2  Q   After that was it pretty much you and
3    Mr. Moore?
4  A   Yes, it was.
5  Q   If you're -- and one of the responsibilities
6    you indicated that you had was the
7    day-to-day operation.  Would it be fair to
8    call that the inside of the operation of
9    120?
10  A   Tell me what you mean by inside of the
11    operation.  I don't understand the question.
12  Q   As I'm understanding it there in Blaine
13    there are 20, 25 people that work there as
14    their principal place of business.
15  A   Yeah.  I'm not sure there's 20 or 25 at
16    Blaine.  But the majority of employees are
17    here in Blaine, Minnesota, yes.
18  Q   So working with those employees was your
19    main responsibility?
20  A   Yes, it was.
21  Q   Okay.  That's what I'm trying to understand.
22    For example, we talked to Ms. Rademacher
23    this morning.  She's a person with whom you
24    would have worked?
25  A   Yes, she was.

ESQUIRE
SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

Case 2:14-cv-01027-LRR   Document 23-3   Filed 01/08/16   Page 43 of 65

P-App. 41

Page 17

1  Q    And what other kind of jobs did you have
2       interaction with as part of your
3       responsibilities there?
4  A    You know, I would help out business agents
5       that needed some help in contract
6       negotiations.  I would help the staff in any
7       way that I possibly could to make the Local
8       streamline its operations.  I did whatever I
9       needed to do to help make the union operate
10      the best it possibly can.  And to support
11      any of the business agents that had needs.
12 Q    And the needs the business agent had were
13      the same kinds of needs in the
14      representational activities that were
15      experienced in from your work in Montana, I
16      take it?
17 A    That's correct.
18 Q    Is it fair to say that all of the employees
19      of 120 reported to the trustee during the
20      time that the trusteeship was in place?
21 A    That's correct.
22 Q    So, for example, if Ms. Rademacher had a
23      question, she could certainly talk to you
24      but she also answered to Mr. Moore?
25 A    Everybody answered to Mr. Moore including

Page 18

1       myself.
2  Q    You had -- you played no part in the
3       decision to terminate Dave Baker's
4       employment; am I right?
5  A    That's correct.
6  Q    You were present when the news that his
7       employment was being terminated was shared
8       with him?
9  A    Yes, I was.
10 Q    Tell me about that meeting.
11 A    The meeting took place, I want to say, that
12      it happened after a general membership
13      meeting.  Dave was called into Mr. Moore's
14      office.  I was called in to be there also.
15      Mr. Moore basically told Dave that he was
16      terminating his employment.  He really
17      didn't say a heck of lot more than that.  He
18      did push a bar of soap across the table at
19      him.  He made some statements about that he
20      could now have soap in his rest room.  My
21      recollection was that Dave asked him to
22      reconsider.  Mr. Moore said that he wouldn't
23      reconsider and then the meeting was over.
24 Q    Before being called in to observe this, were
25      you told that the decision has been made,

Page 19

1       Mr. Dwyer?
2  A    Yes.
3  Q    Do you recall when you were told?
4  A    I believe earlier in the day.
5  Q    And you've indicated that you thought it was
6       the general membership meeting.  Could it
7       have been the hearing that was taking place
8       to, I guess, really to get the trusteeship
9       in place.
10 A    You are correct.  Now that you mention it.
11      It was the initial trustee hearing I believe
12      was the day of the meeting.
13 Q    Did you play any part in the hiring of
14      Mr. Baker's replacement?
15 A    I was just there when Bill offered the job
16      to Mr. Saylor.
17 Q    Do you recall the job being offered to
18      Mr. Saylor prior to Dave being terminated?
19      Or do you recall it occurring afterwards?
20      Or do you recall it at all?
21 A    Well, you know, I don't recall when it took
22      place.
23 Q    Were you part of that decision or part -- or
24      just an observer on that as well?
25 A    Just an observer.

Page 20

1  Q    And I take it that during the meeting where
2       Mr. Baker was told that his employment was
3       ending that -- did you say anything?
4  A    I don't recall saying anything.
5  Q    Would it be fair to say nothing of
6       substance?
7  A    That would be fair.
8  Q    Do you recall whether -- do you recall
9       anything that Mr. Moore said to Mr. Baker in
10      terms of the reason or reasons why his
11      employment was being terminated?
12 A    You know I don't recall that kind of
13      conversation took place.  I know that he
14      basically -- what I recall was he told him
15      his services were going to be terminated and
16      the bar of soap issue and that's my
17      recollection.
18 Q    Earlier in the day when you first learned
19      that Mr. Baker's employment was going to be
20      terminated, were you told of a reason for
21      that action?
22 A    Failure to cooperate with the trustee.
23 Q    And is it Mr. Moore that communicated that
24      reason?
25 A    Correct.

ESQUIRE
SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

Case 2:14-cv-01027-LRR    Document 23-3    Filed 01/08/16    Page 44 of 65

P-App. 42

Page 21

1  Q    What responsibilities, if any, did you have
2      going forward moving into December, January
3      and December of 2012 and January of 2013 and
4      afterwards for any of the financial
5      operations of Local 120 under the
6      trusteeship?
7  A   I was the person that reviewed the finances
8      on a day day-to-day basis.  I worked on some
9      of the contracts that they had like the cell
10      phone operators and stuff like that to get
11      better deals.  You know, I signed the
12      checks.  I reviewed the financial
13      statements.  Those were all my duties going
14      forward till when I left.
15  Q    Did you have any responsibility for
16      initiating an IBT audit of the credit card
17      expenditures of business agents and officers
18      of Local 120?
19  A   I did not.
20  Q    Do you know who did?
21  A   I do not know who initiated that request.
22  Q    What part, if any, did you play, Mr. Dwyer,
23      in filing a proof of loss claim for
24      incomplete or improper credit card
25      expenditures by any existing or former

Page 22

1      employee of Local 120?
2  A   My function there was just to gather any of
3      the information that the bonding company was
4      requesting.  So I would get a request either
5      from the bonding company or from Mr. Moore
6      that we needed this information.  And so I
7      would work with Kris Rademacher and we would
8      gather up the information and then forward
9      it to the bonding agent.
10  Q    So you played no part in the decision to
11      file such a claim?
12  A   No, I did not.  Well, excuse me.  We all
13      along were going to file a bonding claim on
14      the expenditures that the Slawsons had
15      incurred.
16  Q    And, in fact, that claim was filed in the
17      summer of 2014?  Or was it before that?
18  A   That sounds correct.  But, you know, I can't
19      speak to that and say that's absolutely
20      correct.  I believe in the summer of 2014
21      that the claim was filed.
22  Q    No claim was originally filed with respect
23      to the Mr. Baker and Mr. Walz.  Do you know
24      why that was?
25  A   No, I don't know why that was.

Page 23

1  Q    And I take it no claim was filed with
2      respect to -- let me back up little bit.
3          We heard some testimony this
4      morning that the IBT audit of credit card
5      expenses yielded some irregularities with
6      respect to a handful of Local 120 business
7      agents who continued on.  Does that sound
8      right?
9  A   Yeah, that is correct.
10  Q    And is it my understanding then that no
11      bonding claim for recovery was sought with
12      respect to any of those employees?
13  A   That would be correct.
14  Q    And also during the trusteeship no adverse
15      employment consequence was delivered to any
16      of those employees?
17  A   I don't know what you mean by "adverse".
18      But they were paid back some of those claims
19      through forfeiting vacation time.
20  Q    And thanks for the clarification.  Nobody
21      lost their job because of this?
22  A   I do not believe so.
23  Q    And I hope I didn't ask you this before,
24      please forgive me if I did.  But then when
25      the time came you're aware that the claim

Page 24

1      with Zurich, the bonding company, was
2      amended to include Mr. Baker and Mr. Walz at
3      a later time?
4  A   I am aware of that.
5  Q    But you played no part in the decision to do
6      that?
7  A   I did not.
8  Q    Who did?
9  A   I do not know.  I mean, what I was told when
10      the bonding company when reviewing the
11      documents said that you missed these folks
12      here.  And that's when I was instructed to
13      gather the information on them and forward
14      it to the bonding company.
15  Q    Can you tell me about when that was.
16  A   You know, I really don't know when that was.
17      It was sometime last -- towards the last
18      quarter of last year would be my guess.
19  Q    Okay.  And, again, I know I asked this.  But
20      you left Local 120 in terms of the
21      trusteeship responsibilities in January of
22      this year?
23  A   Yeah.  The trusteeship ended on, I want to
24      say, January 18th.  I was then appointed as
25      a personal rep to Local 120 by the

ESQUIRE
SOLUTIONS
800.211.DEPO (3376)
EsquireSolutions.com
Case 2:14-cv-01027-LRR   Document 23-3   Filed 01/08/16   Page 45 of 65
P-App. 43

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

DAVID J. BAKER,                    )
                                   )
        Plaintiff,                 )
                                   )    Case No. 14-1027
vs.                                )
                                   )    DEPOSITION OF
TEAMSTERS LOCAL UNION NO. 120,)        JOHN ROSENTHAL
                                   )
        Defendant.                 )


APPEARANCES:   ATTORNEY KEVIN J. VISSER, of the firm of
               Simmons Perrine Moyer Bergman PLC, 115
               Third Street SE, Suite 1200, Cedar Rapids,
               Iowa 52401, appeared on behalf of the
               Plaintiff.

               ATTORNEY KATRINA E. JOSEPH, Teamsters
               Local Union No. 120, 9422 Ulysses Street
               NE, Blaine, Minnesota 55434, appeared on
               behalf of the Defendant.

Also present:  David J. Baker, Plaintiff


        Deposition of JOHN ROSENTHAL, taken at the

Hotel Julien, Harbor Gallery Banquet Room, 200 Main

Street, Dubuque, Iowa, on December 2, 2015, commencing

at 9:05 o'clock a.m., before Dixie Shelton, a Certified

Shorthand Reporter in and for the States of Iowa and

Illinois, in pursuance to notice and subpoena in the

above-entitled matter.

INDEX

WITNESS                          EXAMINATION
John Rosenthal    (Mr. Visser)              3


                EXHIBITS
Exhibit                          Marked
Rosenthal Deposition Exhibit Nos. 1-20       82

(All exhibits attached except Nos. 4, 6 & 13
which were not used and retained by Attorney
Visser)


Certificate of Shorthand Reporter          117

JOHN ROSENTHAL,

being first duly sworn, was examined and testified as follows:

EXAMINATION BY MR. VISSER:

Q.   Tell us your name.

A.   John William Rosenthal.

Q.   Where do you live?

A.   I live at 503 South Street, Galena, Illinois.

Q.   How are you employed?

A.   I'm employed by the Teamsters Union Local 120.

Q.   For how long?

A.   For the last fifteen years.

Q.   What do you do for Teamsters Union Local 120?

A.   I'm a Business Agent.

Q.   Do you hold any other titles or responsibilities?

A.   I'm the Vice President of the local.

Q.   Okay.  Mr. Rosenthal, have you given deposition testimony before?

A.   Years ago.

Q.   Okay.  One of the things, just in terms of convenience that you need to think about, is that Dixie is taking down everything that both of us say so it's a lot easier for her if only one of us speaks at once.  I will try to wait till you complete your answers and I'd ask that you wait

till I complete my questions.  Fair enough?

A.   That's fair enough.

Q.   And you're answering the questions audibly.  You understand you need to answer them with words rather than familiar sounds; right?

A.   Understood.

Q.   I'm sorry.  Did you tell me there were other positions that you do hold in Local 120?

A.   I'm the Vice President of the local, yes.

Q.   What's involved with being the Vice President of the local?

A.   Participate in the Executive Board meetings and decisions made by the Executive Board for the local.

Q.   When you say the local, what's the extent of Local 120?  What's its geographic range?

A.   We cover Minnesota, Iowa, North and South Dakota and a little bit into Illinois, Jo Daviess County actually.

Q.   Okay.  No Wisconsin?

A.   No, sir.

Q.   What did you do prior to becoming a Business Agent for Local 120 or its predecessor?

A.   I was a truck driver for Standard Forwarding Company, I was a driver for H & W Motor Express

and I was a Business Agent for Teamsters Local 421, and then I drove a cement truck prior to that for Flynn Ready-Mix.

Q.   What's the extent of your formal education?

A.   I graduated from high school.

Q.   Okay, which one?

A.   Galena High School.

Q.   What's your date of birth?

A.   November 13th, 1960.

Q.   What was the context of the other matter in which you gave deposition testimony?

A.   That was in a case that -- it was Spahn & Rose Lumber Company.  Actually it was a court case and I had negotiated that contract back in 1988, I believe, and there was a disagreement on what the language meant, I think it had to do with casual employees, and that's been a number of years ago.

Q.   So this was in your role as a -- as Business Agent?

A.   My role as a former Agent, yes.

Q.   And once you became a Business Agent for Local 421, have you had employment in any bargaining units since then?

A.   Do you want to be more clear on that?

Q.   When did you first become a Business Agent?

1   **A.  It was shortly after.  I don't know exact time**
2   **period.**
3   Q.  How is it that you learned this?
4   **A.  By seeing some of the bills when we were going**
5   **through stuff.**
6   Q.  Did you ever approach Mr. Baker to confront him
7   with any of these supposed discrepancies?
8   **A.  He was already gone.**
9   Q.  So I take it the answer is no?
10  **A.  The answer is no, yes, sir.**
11  Q.  Do you know whether anyone associated with the
12  union has ever confronted Mr. Baker with these
13  supposed variances from policy or practice?
14  **A.  I'm not aware of that.**
15  Q.  You turned in an insurance claim, though, after
16  this lawsuit was filed; right?
17  **A.  Oh, with our bonding company, sir?**
18  Q.  Yes.
19  **A.  Yes.**
20  Q.  Do you know whether any of the money that was
21  paid to your union was for any supposed misuse of
22  funds by Mr. Baker?
23  **A.  Yes, it was.**
24  Q.  And how is it that you know that?
25  **A.  We got the letter.  I read the letter because I**

1   **was on the Executive Board and it showed that**
2   **there was so much paid back to the local and it**
3   **named what portion was for five different**
4   **individuals and Mr. Baker's name was listed.**
5   Q.  Are you sure whether the portions were identified
6   in the letter that you received?
7   **A.  Yes, they were.**
8   Q.  So for any supposed misuse your union has already
9   been fully compensated?
10  **A.  I don't know if it's fully compensated.  This is**
11  **what the bonding company had paid the local**
12  **union.**
13  Q.  You knew that Kathy Baker was a member of the
14  Teamsters Local; correct?
15  **A.  Yes, I did.**
16  Q.  Okay.  What was Mrs. Baker's job during the time
17  before Dave was fired?
18  **A.  Kathy worked for ECIA and she was kind of -- it**
19  **was a position that had to be a union position**
20  **and Kathy had been in there for a long time.**
21  **Actually she was with Project Concern and I think**
22  **that turned over to ECIA.**
23  Q.  And is ECIA a public enterprise?
24  **A.  It's public sector, yes.**
25  Q.  Okay, so she was part of a bargaining unit?

1   **A.  Basically it was a one-person bargaining unit.**
2   Q.  Okay.  What role did you have in monitoring the
3   dues payments to Local 421 and/or Local 120?
4   **A.  None.  As far as Mrs. Baker?**
5   Q.  Yes.
6   **A.  None at all.**
7   Q.  Whose job was it to monitor the payment of dues
8   and the amount of dues payments?
9   **A.  Actually the dues would be collected by our**
10  **bookkeeper but those dues were paid by Mr. Baker**
11  **with a personal check.**
12  Q.  What standards, if any, were in place to
13  determine whether the proper amount was being
14  paid for any members' dues?
15  **A.  With most of our -- pretty much all our**
16  **bargaining units, that's based off their hourly**
17  **wage that's listed in their collective bargaining**
18  **agreement.  With this one there was no collective**
19  **bargaining agreement so our bookkeeper could only**
20  **go off of what she was told what the dues should**
21  **be.**
22  Q.  So there's no collective bargaining agreement
23  that covers Mrs. Baker.
24  **A.  There was not.**
25  Q.  And do you have other one-person units?

1   **A.  I can't think of any other one-person unit**
2   **that didn't have a collective bargaining**
3   **agreement.**
4   Q.  Can you think of -- I mean, it's not really
5   collective bargaining if it's just one person in
6   the unit, is it?
7   **A.  Technically not as far as the -- how the IRB**
8   **looks at it.  You're not really supposed to have**
9   **a one-man band but we have had over the years in**
10  **construction.**
11  Q.  Is it usually situations where the membership has
12  just decreased or seasonally it's gone down to a
13  single member?
14  **A.  That or there's one person that wants to be a**
15  **card-carrying Teamster in construction and they**
16  **do that.  We try not to do it anymore.**
17  Q.  You don't have any reason to believe that
18  Mr. Baker and Mrs. Baker are ineligible for the
19  health benefits due him under the, it's called
20  the lifetime health insurance plan, do you?
21  **A.  Do I believe --**
22  Q.  Yes.
23  **A.  -- they're eligible?  I have my own personal**
24  **opinion on it.**
25  Q.  What's your opinion?

1 Q. Were you aware that before February 5th, 2015,
2 Mr. Baker had been trying to lead a rebellion
3 against the trusteeship?
4 A. Dave brought a bunch of people to a meeting that
5 was held by the Trustees that explained to
6 everybody what was going on with the trusteeship
7 and Dave wrangled some guys to show up. As a
8 matter of fact, they met at the bar down behind
9 the UAW before they come up to the meeting and
10 that kind of started out, you know, guys wanting
11 to know what's going on with Dave's termination
12 and the Trustee explained to him we weren't there
13 to discuss that and it basically kind of petered
14 out and there was maybe one or two people, you
15 know, still kind of asking questions. As a
16 matter of fact, there was a woman in the back, a
17 member of ours, that basically said, "We're here
18 to find out what's going on with our local, not
19 Dave," but a couple guys kept it up and the
20 meeting adjourned and it was brought on by Dave
21 to get people there.
22 Q. This is after his employment was terminated.
23 A. That was after his employment was terminated.
24 Q. I'm going to show you what's been marked as
25 Deposition Exhibit 16. What's this pertain to?

1 A. This had to do with the money that we received
2 from the bonding company.
3 Q. Okay, so earlier this year the bonding company
4 sent Local 120 a $232,000 check?
5 A. Correct.
6 Q. Do you know whether that was a complete payment
7 for all the claims that were made?
8 A. My understanding, this was a payment that the
9 bonding company was going to pay us --
10 Q. Okay.
11 A. -- on a claim that we submitted to the bonding
12 company or was submitted by the International
13 Trustees.
14 Q. And there was originally a large claim for
15 Slawson, Sr., Jr. and Chester; right?
16 A. Correct.
17 Q. Who's Chester?
18 A. He is the father of Sr.'s grandchild.
19 Q. Okay, and the Baker-involved claims were added on
20 in February of 2015?
21 A. They could. I don't know exact date.
22 Q. What is it that would be funny about having
23 Mr. Baker read to the group the fact of -- the
24 fact that a payment had been made?
25 A. The fact Dave still came to the meetings and,

1 this is my personal opinion, Dave doesn't think
2 he did anything wrong, and to me it would have
3 been funny for him to read this and read his own
4 name off that he was part of what the bonding
5 company paid back because to me it always looked
6 like Dave was throwing it in my face that he was
7 coming to the meetings.
8 Q. Did you provide some support to Mr. Baker when he
9 ran for local office here?
10 A. Yes, we did.
11 Q. What support did you provide?
12 A. We actually -- me and Kevin had a fundraiser for
13 Dave at the UAW Hall to raise money for him. We
14 also went out and put up Dave Baker signs all
15 over Dubuque County, wherever he needed to put
16 in, and we also talked to our members to support
17 Dave for this. Me and Dave have been friends for
18 thirty some years.
19 Q. What's the origin of the friendship between you
20 and Mr. Baker?
21 A. We worked together thirty-three years ago at
22 Flynn Ready-Mix. When I was the Agent, Dave was
23 the Chief Steward at Flynn Ready-Mix. We worked
24 together pretty closely on stuff. Then he and --
25 Dave and myself ran and took the local back over

1 in 1992 and worked together from 2000 up till
2 Dave's termination.
3 Q. You say you took the local over in 1992. What
4 was -- what was involved with that?
5 A. Dave and I put together a slate and ran and took
6 the local back over from the guy who was the
7 Principal Officer. That's when Dave became the
8 Principal Officer of 421 and I became the Vice
9 President.
10 Q. Why did you do it? What was the big reason back
11 in '92 for doing that?
12 A. Because the guy who was in as the Principal
13 Officer was a moron.
14 Q. And you had every right as union members to
15 express your opinions that he was a moron or that
16 he shouldn't be doing the job; right?
17 A. Correct. I worked with the individual so I can
18 say that with firsthand knowledge.
19 MR. VISSER: Why don't you give me about
20 five minutes if you would here, Katrina, and I
21 think we can wrap up with Mr. Rosenthal.
22 MS. JOSEPH: Okay.
23 MR. VISSER: Thank you.
24 (A break was taken from 11:54 a.m. until
25 12:19 p.m.)

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| David J. Baker, | CASE NO. 14-1027 (LRR) |
| Plaintiff, | |
| vs. | **DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |
| Teamsters Local Union No. 120, | |
| Defendant. | |

To:   Plaintiff above-named and his counsel:

Defendant, Teamsters Local Union No. 120 (Defendant or Local 120), provides and sets forth the following Answers to Plaintiff's First Set of Interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure.

## GENERAL OBJECTIONS AND RESERVATIONS

1.   Defendant reserves the right to supplement these responses, if it appears at any time that inadvertent errors or omissions have been made, or if additional evidence is discovered or disclosed which may be relevant thereto.

2.   Defendant reserves all objections as to the competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose of the information or documentation referred to or responses given, or the subject matter hereof, in any subsequent proceeding in, or in the trial of, this action or any other action or proceeding; and the right to object to other discovery procedures involving or relating to the subject matter of the production of documents to which Plaintiffs herein responds.

improper credit card use by Baker (Claim No. 680067985). Include in your answer the following:

    (a)    the date the decision was made to file the claim;
    (b)    the reason the claim was filed;
    (c)    the reason the claim was not filed prior to February 12, 2015; and
    (d)    the name, job title, address and telephone number of each person involved in the decision to file the claim.

ANSWER:

    (a)    The decision was made to file the claim in January 2015.
    (b)    The claim was filed based upon the recommendation of the Zurich representatives investigating the prior bond claim against Bradley A. Slawson, Bradley D. Slawson, and Todd Chester.
    (c)    Defendant had intended to proceed with internal union charges only against Plaintiff, but at the suggestion of the Zurich representatives, also proceeded with a bond claim.
    (d)    Former Trustee William Moore, information previously noted.

**INTERROGATORY NO. 20:** Identify each business agent whose credit card receipts were reviewed by IBT auditors in November and December 2012 (as alleged in Paragraph 20 of Defendant's counterclaim) and state the result of the audit for each business agent identified. Include in your answer the following:

    (a)    the name, address and telephone number of each business agent audited;
    (b)    whether the audit revealed any alleged misuse of the business agents' union credit card;
    (c)    whether the business agent is still employed by Defendant and, if not, the date and reason(s) for their separation from employment;
    (d)    whether Defendant filed a claim for insurance coverage with Zurich, or any other carrier, with regard to any alleged misuse of the business agents' union credit card and, if so, the claim number relating thereto;
    (e)    whether Defendant filed a lawsuit or any other type of claim against the business agent any alleged misuse of the business agents' union credit card and, if so, the case number and jurisdiction in which the case or claim is filed; and
    (f)    the name, job title, address and telephone number of each representative of Defendant having knowledge of the audit(s).

ANSWER:

    (a)    To the best of Defendant's information and belief, the following individuals were subjects of the audit: Bryan Rademacher, Tom Erickson, Donny Walz, Brian Nowak, Brad Jenkins, Brenda Emerson, Steve Sullivan, Paul Johnson, Bradley A. Slawson, Bradley D. Slawson, and Plaintiff. Information previously noted,

Case 2:14-cv-01027-LRR   Document 23-3   Filed 01/08/16   Page 51 of 65

P-App. 49

except Bradley A. Slawson and Bradley D. Slawson, for whom Defendant has no current contact information.

(b) Yes, the audit revealed misuse of all the listed business agents' credit cards, with the exception of Emerson.

(c) Rademacher left his employment as a voluntary quit effective 12/31/2013. Bradley A. Slawson and Bradley D. Slawson were terminated from their employment effective 11/13/2012. Walz retired on 5/1/2013. Sullivan resigned his employment effective 6/29/2013. Brenda Emerson was terminated effective 3/17/2014. Johnson resigned his employment effective 10/1/2013. Plaintiff was terminated on 12/17/2012. Erickson, Nowak, and Jenkins remain employed at Defendant.

(d) Defendant field claims for insurance coverage with Zurich as it related to Bradley A. Slawson, Bradley D. Slawson, Walz, and Plaintiff. Claims numbers are contained on the relevant documents in Defendant's Responses to Plaintiff's Request for Documents.

(e) Internal union charges for the improper expenditures were filed against Bradley A. Slawson and Bradley D. Slawson. Erickson, Rademacher, Nowak, Jenkins, Sullivan, and Johnson were asked to repay the improper expenditures and did so without need to resort to charges. Defendant has sought repayment from Plaintiff in the instant lawsuit.

(f) No representative of Defendant has specific knowledge relating to the audit. Former Trustee William Moore and former Assistant Trustee Joseph Dwyer, information previously noted, have information relating to the audit.

**INTERROGATORY NO. 21:** Identify and describe in detail the nature of the alleged October 2014 report that Plaintiff's wife was paying dues at a rate lower than prescribed by Union Bylaws and Defendant's investigation thereof (as alleged in Paragraph 22-23 of Defendant's counterclaim). Include in your answer the following:

(a) the name, address and telephone number of the person(s) making the report;

(b) whether the report was written or oral;

(c) the date and time the report was received;

(d) a description of the contents of the report;

(e) the name, job title, address and telephone number of the person(s) receiving the report;

(f) a description of the Defendant's investigation into the report;

(g) the name, address, telephone number and job title of each person how participated in the investigation of the complaint or report;

(h) a description of the outcome of the investigation; and

(i) whether and how the report and/or investigation was communicated to Plaintiff or his wife.

P-App. 50

**As to Substance:**

Date: 6/23/15 _____

Teamsters Local Union No. 120

Tom Erickson, President

**As to Form:**

Dated this 23rd day of March, 2015.

TEAMSTERS LOCAL UNION NO. 120

Katrina E. Joseph, General Counsel
9422 Ulysses Street NE
Blaine, Minnesota 55434
Tel.: 763-267-6146
Fax: 763-267-6121
Email: kjoseph@teamsterslocal120.org
*ADMITTED PRO HAC VICE*

HEDBERG & BOULTON, PC

Mark T. Hedberg, AT 0003285
100 Court Avenue Suite 425
Des Moines, Iowa 50309
Tel.: (515) 288-4148
Fax: (515) 288-4149
Email: mark@hedberglaw.com

ATTORNEYS FOR DEFENDANT

IN THE IOWA DISTRICT COURT FOR DUBUQUE COUNTY

DAVID BAKER, )
)
      Petitioner, )        CVCV058117
)
vs. )
)          INDEX
IOWA EMPLOYMENT APPEAL BOARD, )   TO CERTIFIED RECORD
)   EMPLOYMENT APPEAL BOARD
      Respondent. )
)
)

* * * * * * * * * *

| CONTENTS | PAGES |
|---|---|

| | |
|---|---|
| Notice of claim | 1-3 |
| Notice of fact-finding interview | 4 |
| Fact-finding information | 5-6 |
| **Decision of the Workforce Development Representative** | **7** |
| Notice of appeal | 8 |
| Notice of hearing | 9-10 |
| Appearance | 11 |
| Transcript of Evidence & Exhibits | 12-180 |
|     Claimant's Exhibits:<br>    A,B,C,           pp.112-162 | |
|     Employer's Exhibits:<br>    1,2,3,4,6,7,     pp.163-179 | |
| **Decision of the Administrative Law Judge** | **181-185** |
| Notice of appeal | 186 |
| Acknowledgement of appeal | 187 |
| Transmittal of testimony | 188 |
| Request for extension | 189 |
| Ruling on request for extension | 190 |
| Second request for extension | 191 |

Ruling on second request for extension                  192

Claimant's Brief                                     193-307

**Decision of the Employment Appeal Board**         **308-309**

Request for rehearing                                310-315

Acknowledgement of request for rehearing               316

**Decision on application for rehearing**              **317**

Certificate                                          318-319

UNEMPLOYMENT INSURANCE APPEALS BUREAU
HEARING NUMBER 12A-UI-01240-JT
FEBRUARY 28, 2013; DES MOINES, IOWA

DAVID J BAKER
3055 CASTLE WOODS LANE          :
DUBUQUE  IA  52001              :
                               :
       CLAIMANT-APPELLANT       :
                               : TRANSCRIPT OF EVIDENCE
                               :
                               :
GENERAL DRIVERS LOCAL NO 120    :
TEAMSTERS LOCAL UNION NO 120    :
9422 ULYSSES ST NE              :
BLAINE  MN  55434               :
                               :
       EMPLOYER-RESPONDENT       :


APPEARANCES:

       The claimant-appellant participated in the hearing personally with
Kevin Visser, Attorney and witness Steven Christ.

       The employer-respondent participated in the hearing by Joseph Dwyer and
Kandi Stallsmith and was represented by Katrina Joseph, Attorney.


                               Sherry Small
                               Transcriber Operator

1    ADMINISTRATIVE LAW JUDGE: 3:30 p.m. we'll be on the record in appeal

2    number 13A-UI-01240-JT. This case concerns claimant David Baker and

3    employer General Drivers Local Number 120, Teamsters Local Union Number

4    120. I am Administrative Law Judge James Timberland. This is obviously an in-

5    person hearing at the Dubuque Workforce Development Center. It is being

6    recorded. The claimant, Mr. Baker, is present. He's represented by Attorney

7    Kevin Visser. Mr. Visser, did you have anybody besides Mr. Baker lined up to

8    testify today?

9            CLAIMANT ATTORNEY: Mr. Steve Crist is here and may testify

10   depending upon the employer's evidence.

11           Q: Okay. Mr. Crist, will you spell your last name for me, please?

12           : C-H-R-I-S-T.

13           Q: Thank you. Just the way it should be. Thank you. Okay, and the

14   employer's present, represented by Katrina Joseph. Ms. Joseph, are you inside

15   counsel or outside counsel?

16           EMPLOYER'S ATTORNEY: I'm inside counsel.

17           Q: Okay, thanks. And then go ahead and tell me who you have

18   lined up to testify today.

19           EMPLOYER'S ATTORNEY: Kandi Stallsmith and it's K-A-N-D-I,

20   last name is S-T-A-L-L-S-M-I-T-H and Joseph Dwyer, D-W-Y-E-R.

21           Q: Okay, thank you. The law requires that I start every hearing with

22   an opening statement so we kind of started down that path. We're going to

23   continue down that path and we'll get to evidence as soon as we can. This case is

24   before me based on Mr. Baker's appeal from the reference 01 decision entered

25   back on January 23, 2013. That decision denied benefits. It went on to say that

26   Mr. Baker had been discharged on December 17, 2012 for conduct not in the best

27   interest of the employer. In other words, for some form of misconduct. The issues

28   for our hearing were set out in the notice that was mailed on February 15 of 2013.

29   First issue is whether Mr. Baker was discharged for misconduct in connection with

30   the employment that would disqualify him for benefits. Second issue is there just

31   in case even though it might not apply. It's whether Mr. Baker voluntarily quit and

32   did so for good cause attributable to the employer. Here's the process we need to

33   follow for the rest of our hearing. In a moment I need to confirm mailing

34   addresses. That's a US Department of Labor requirement. I, and then we'll see

1           EMPLOYER: I believe it was 4:00.

2           CLAIMANT ATTORNEY: So if you met with Mr. Baker at 4:00 in

3  the afternoon he couldn't have been told at 10:00 in the morning not to use his

4  credit card to hold the lawyer's room, right?

5           EMPLOYER: No, he couldn't have been.

6           CLAIMANT ATTORNEY: Okay. Now -- do you have something

7  to add to your testimony?

8           EMPLOYER: I, I -- you know, the meeting may have been 3:00.

9  I'm, I'm -- it was three or four. I just -- it was in the late afternoon. I'm just not

10  positive of the time.

11          CLAIMANT ATTORNEY: Thank you. And whether it's three or

12  four he wouldn't have known at ten in the morning.

13          EMPLOYER: Yeah, I'm just -- want to make sure that I have the

14  correct time. It's either three or four in the afternoon.

15          CLAIMANT ATTORNEY: And just to make real clear, no credit

16  card misuse had any part -- anything to do with Mr. Baker's termination, right?

17          EMPLOYER: Again -- just say it again. I missed something.

18          CLAIMANT ATTORNEY: Yes, sir. I'm sure it's a clumsy

19  question. It's late in the day for me. I want to be clear that nothing having to do

20  with credit card misuse had anything to do with Mr. Baker's termination on

21  December 17th, right?

22          EMPLOYER: That's correct.

23          CLAIMANT ATTORNEY: And in fact he's never been presented

24  with the ledger of his credit card charges that has been presented here today, has

25  he?

26          EMPLOYER: I don't believe that he has.

27          CLAIMANT ATTORNEY: Can you tell me when that was first

28  developed?

29          EMPLOYER: When it was first --

30          CLAIMANT ATTORNEY: Uh, produced.

31          EMPLOYER: Produced? It was at the completion of the auditor's

32  review, shortly thereafter, so probably, you know, if I gave you a date I couldn't be

33  sure of it but probably sometime in mid to late-January.

34          CLAIMANT ATTORNEY: Have you completed the review of

IN THE IOWA DISTRICT COURT FOR DUBUQUE COUNTY

DAVID BAKER,                           )
                                       )        CVCV058117
        Petitioner,                    )
                                       )
vs.                                    )        C E R T I F I C A T E
                                       )               OF
IOWA EMPLOYMENT APPEAL BOARD,          )        EMPLOYMENT APPEAL BOARD
                                       )
        Respondent.                    )
                                       )
                                       )
                    * * * * * * * * * *

        The Employment Appeal Board hereby certifies that a full and complete record was

kept of all proceedings in connection with the disputed claim for unemployment benefits

of David Baker and that all testimony taken at any hearing in connection with such

disputed claim was recorded and has been transcribed.

        The Employment Appeal Board further certifies that the above and foregoing

constitute the record of all documents, papers and testimony taken in the matter, together

with its findings of fact and decisions therein.

        Items certified as "not admitted" and responses to discovery not admitted at

hearing were not relied upon by the EAB in reaching factual determinations in this

matter. Documents attached to appeals and argument which are evidentiary in nature,

unless allowed as new and additional evidence, are likewise treated only as argument

and/or allegation by the Board and not relied upon in making factual determinations.

Such items are included in the certification to reflect all "submissions" made to the

agency as required by Iowa Code §17A.12.

Witness my hand and seal of the Employment Appeal Board affixed this 6th day of

December, 2013.

Sherry Small, Paralegal
Employment Appeal Board
Lucas State Office Bldg.
Fourth Floor
Des Moines, Iowa 50319

Original mailed to clerk of court.

Copies to:

KEVIN VISSER ATTORNEY
115 THIRD STEET SE
SUITE 1200
CEDAR RAPIDS IA 52401

KYLE MCCOY ATTORNEY
1678 GLENWOOD ROAD
ANN ARBOR MI 48104

# INTERNATIONAL BROTHERHOOD ᴏꜰ TEAMSTERS



**JAMES P. HOFFA**
General President

25 Louisiana Avenue, NW
Washington, DC 20001

**KEN HALL**
General Secretary-Treasurer

202.624.6800
www.teamster.org



April 10, 2015

Mr. John W. Harrison, Jr., Chairman
Eberts & Harrison, Inc.
1000 Century Plaza, Suite 329
10630 Little Patuxent Parkway
Columbia, Maryland  21044-3276

| Subject: | Claim Number | 638 0061918 |
|---|---|---|
| | Bond Number | |
| | Insured | Local Union No. 120 |

Dear Sir and Brother:

Enclosed please find two completed original Release and Assignment Forms authorizing release of a claim check in the amount of $232,062.36 as settlement in connection with the subject claim number.

If you require additional information, please contact this office.

Sincerely,

Ken Hall
General Secretary-Treasurer

KH:rbb
Enclosures
cc: Ed Sullivan, Labor Benefits, LLC

D004775

## RELEASE AND ASSIGNMENT

Received from the Fidelity and Deposit Company of Maryland the sum of $232,062.36, being payment in full of the liability of said company for claims filed under its Bond No. _____ as set out in various Proofs of Loss dated July 29, 2014.

In consideration of said payment, the Fidelity and Deposit Company of Maryland is hereby released and discharged from said claims and International Brotherhood of Teamsters and Local Union No. 120, do hereby sell, assign, transfer and set over unto the Fidelity and Deposit Company of Maryland the said account in the amount of $232,062.36 against Todd A. Chester, Bradley D. Slawson, Sr., Bradley A. Slawson, Jr., David J. Baker, and Donald M. Walz.

Signed, sealed and dated this 26th day of MARCH , 2015

International Brotherhood of Teamsters
and Teamsters Local Union No. 120

_Tom Erichson_
Name

_President_
Title

JOHN MUEHLBAUER
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2016

_John Muehlbauer_

D004776

D004776a

CLAIM NO. 6380061918 et al.

## RELEASE AND ASSIGNMENT

Received from the Fidelity and Deposit Company of Maryland the sum of $232,062.36, being payment in full of the liability of said company for claims filed under its Bond No.            as set out in various Proofs of Loss dated July 29, 2014.

In consideration of said payment, the Fidelity and Deposit Company of Maryland is hereby released and discharged from said claims and International Brotherhood of Teamsters and Local Union No. 120, do hereby sell, assign, transfer and set over unto the Fidelity and Deposit Company of Maryland the said account in the amount of $232,062.36 against Todd A. Chester, Bradley D. Slawson, Sr., Bradley A. Slawson, Jr., David J. Baker, and Donald M. Walz.

Signed, sealed and dated this 26ᵀᴴ day of MARCH, 2015.

International Brotherhood of Teamsters
and Teamsters Local Union No. 120

_Tom Erichson_
Name

_President_
Title


JOHN MUEHLBAUER
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2016

_John Muehlbauer_

D004777

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID J. BAKER,** | ) | **Case No. 14-1027** |
| **Plaintiff,** | ) | |
| **vs.** | ) | **DECLARATION OF KEVIN J.** |
| | ) | **VISSER IN SUPPORT OF MOTION** |
| **TEAMSTERS LOCAL UNION NO. 120,** | ) | **FOR SUMMARY JUDGMENT** |
| **Defendant.** | ) | |

I, Kevin J. Visser, declare as follows under penalty of perjury:

1.      I am an attorney with the law firm of Simmons Perrine Moyer Bergman PLC, which represents Plaintiff David J. Baker in the above-captioned matter.

2.      Plaintiff's Motion for Summary Judgment relies in part on exhibits used during the deposition of William Moore as well as documents produced in discovery in this matter.

3.      The following deposition exhibits contained in Plaintiff's Appendix in Support of Motion for Summary Judgment are true and correct copies of the deposition exhibits marked in this case: Deposition Exhibit No. 18 and Deposition Exhibit No. 20.

4.      The following document contained in Plaintiff's Appendix in Support of Motion for Summary Judgment is a true and correct copy of a document produced by Defendant through discovery in this case: Executed Release and Assignment and Transmittal Letter.

5.      The following document is a true and correct copy of an excerpt from the Certified Record of the Iowa Employment Appeal Board submitted on or about December

9, 2013 in the matter of *David Baker v. Iowa Employment Appeal Board*, Case No. CVCV58117

filed in the Iowa District Court for Linn County: Excerpt of Unemployment Appeal

Hearing.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 8th day of January, 2016.

SIMMONS PERRINE MOYER BERGMAN PLC

By: /s/Kevin J. Visser
Kevin J. Visser, AT0008101
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Tel: 319-366-7641; Fax: 319-366-1917
Email: kvisser@simmonsperrine.com

ATTORNEYS FOR PLAINTIFF

2